203 N.J. Super. 400 (1984)
497 A.2d 223
MARION MISKOFSKY, PLAINTIFF,
v.
THE OHIO CASUALTY INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Law Division Gloucester County.
Decided October 31, 1984.
*403 Gary D. Ginsberg, for plaintiff (Nathan Friedman, attorney).
Robert T. Zane, for defendant (Montano, Summers, Mullen, Manuel & Owens, attorneys).
HOLSTON, J.S.C.
This matter was tried before the court without a jury based on the mandate of Thomas P. Manetti v. Prudential Property and Casualty Insurance Company, 196 N.J. Super. 317 (App. Div. 1984). That decision held that there is no right to a jury trial for personal injury protection (P.I.P.) benefits where the issue is what benefits, if any, are due.
*404 The issues before the court are:
(a) Whether N.J.S.A. 39:6A-4(a) requires that before an insurance company is obligated to pay medical expenses incurred as a result of personal injuries proximately caused by an automobile accident, such benefits must be both reasonable and necessary.
(b) If they must be both reasonable and necessary, whether necessary medical expenses must be expenses intended to effect a cure of the injured party or include treatment, once a plateau of recovery has been reached by the injured party, which is only palliative in nature.
The facts are contained in various medical reports stipulated to by the parties. These facts are as follows:
On August 27, 1981, plaintiff, Marion Miskofsky, sustained injuries in an automobile accident. The nature of the injuries are not in dispute. They are soft tissue injuries to the neck, shoulders, right knee and right elbow. Plaintiff has been treated by Dr. Greenetz and Dr. Kaufman, an orthopedic specialist, as a result of these injuries. She received physical therapy, treatment in the nature of heat, massage, diathermy, infra-red, ultrasonics, medcosonlator, intermittent mechanized cervical traction, medicine in the nature of muscle relaxants, analgesics and anti-inflammatory agents and, on one occasion, osteopathic manipulation.
Plaintiff first saw Dr. Greenetz on September 1, 1981 and was treated by him approximately twice a week through April 1982. Thereafter, plaintiff continued to be treated by Dr. Greenetz, however, on a less frequent basis. Approximately October 1982, Dr. Greenetz ceased administering physical therapy treatments to the plaintiff.
On March 30, 1982, plaintiff first went to see Dr. Kaufman of the Regional Orthopedic Professional Association. At that time, plaintiff presented to Dr. Kaufman basically the same complaints with regard to her neck, shoulders and right knee. Dr. Kaufman ordered an x-ray of the entire knee which was *405 normal and advised plaintiff to continue under the care of Dr. Greenetz, advising Dr. Greenetz that they might have to consider the possibility of a derangement of the right knee. Dr. Kaufman next saw plaintiff on June 15, 1982 at which time, plaintiff again made complaints with regard to her right knee and at which time, Dr. Kaufman ordered an arthrogram of the right knee to be performed. That arthrogram was performed on June 16, 1982 and was "unremarkable." Thereafter, plaintiff continued to see Dr. Kaufman while still treating with Dr. Greenetz on the basis of at least once and sometimes twice a month through March 1983. During those visits, Dr. Kaufman continued to treat plaintiff on the basis of her subjective complaints making no objective findings of injury.
Dr. Kaufman sent plaintiff to the Washington Township Division of John F. Kennedy Hospital for physical therapy treatments to her neck and left shoulder. The physical therapy treatments continued through May 1984 on an "as needed" basis. It is unclear whether plaintiff resumed physical therapy treatments thereafter. There have been numerous breaks in plaintiff's treatment. Treatment ceased when plaintiff had no complaints and resumed when plaintiff again complained.
Dr. Kaufman noted at various times during the period of August 1982 through January 1984 that on examination, the range of motion for plaintiff's cervical spine was 65%-70% of normal and 1 + for pain.
An E.M.G. was performed by Dr. Robert Terrnova, a neurologist, on June 30, 1982. The testing was performed on the left arm and the bi-lateral para-spinal muscles in the cervical region. The findings of Dr. Terrnova with regard to the E.M.G. were normal.
A CAT Scan was performed by Dr. Albert Marsh in Vineland. The CAT Scan was done with respect to the C5-6 disc. The findings of the CAT Scan were normal.
As a result of the medical treatment which plaintiff received for the various injuries sustained in the accident of August 27, *406 1981, plaintiff made a claim for medical expense benefits as well as income continuation benefits with defendant, The Ohio Casualty Insurance Company. The Ohio Casualty Insurance Company paid various bills including bills submitted by Dr. Greenetz, Elmer Hospital, Blackwood Pharmacy, Booth Radiology and Colonial Radiology.
On March 11, 1982, plaintiff, at the request of The Ohio Casualty Insurance Company, was examined by Dr. Richard Naftulin, orthopedic surgeon. In his report dated March 11, 1982, Dr. Naftulin sets forth the findings of his physical examination.
Dr. Naftulin indicates that the plaintiff, in her history, states she has continued pain and discomfort in the regions of her cervical spine, right shoulder, right knee and right elbow. The plaintiff admits she is improving under the care of Dr. Greenetz. His impression is that she has a resolved cervical strain and sprain with miofascitis and resolved contusions to the right shoulder, right elbow and right knee. He further concludes "Marion Miskofsky at this time does not have any evidence of permanent or partial disability." He feels that she has "reached a plateau in her recovery such that any continued physical therapy modalities or medical treatment is not needed."
As a result of that examination and the report received from Dr. Naftulin, The Ohio Casualty Insurance Company advised plaintiff's counsel and plaintiff's treating physician at the time, Dr. Greenetz, that they would not be honoring any further invoices incurred by plaintiff after March 11, 1982, the date of Dr. Naftulin's examination.
Plaintiff, as a result of the automobile accident on August 27, 1981 and the injuries sustained therein, instituted suit against the drivers of the vehicles involved. As a result of these personal injury claims, plaintiff was examined on November 4, 1982 by Dr. Gerald Packman, an orthopedic surgeon in Vineland, New Jersey. This examination was made at the request *407 of the insurance carrier of one of the defendants in the personal injury action. Dr. Packman's report is dated December 4, 1982. In that report, he sets forth his physical examination of plaintiff plus his findings. In his report, he notes subjective complaints as of the date of his examination on November 4, 1982 and the increased problem with the left shoulder and neck for which she had been prescribed therapy three times a week for three weeks. Although he indicated she is at full activity, he notes that by her own description, she does have some discomfort with some activities and that those discomforts sometimes awaken her at night. He concludes after examination, however, that plaintiff has reached a plateau in her recovery and that there is nothing to suggest that she has a condition that will deteriorate with time. His diagnosis is "emotional overreaction to injury and chronic pain in the left shoulder, neck and right knee."
Plaintiff was again examined in connection with the personal injury action in December 1983 by Dr. James Collier, orthopedic surgeon of Haddonfield, New Jersey. Dr. Collier's report is dated December 29, 1983 and sets forth his findings with respect to the examination of the plaintiff. Dr. Collier notes in his report that plaintiff complains of the fact that prolonged standing and prolonged walking bothers her right knee. Additionally, she complains that the knee is painful during periods of damp weather and that sometimes her right ankle gets numb. Further, she explains that she wears an elastic type knee cage with joint lateral bars and circumferencial straps. His examination indicates that, although there is no evidence of any swelling or increased heat in the right knee, there was some tenderness to palpation about an inch below the joint line medially. As of the date of the examination, plaintiff indicated to Dr. Collier that she had worn her present brace for about one and a half months. She also complained that she experienced pain in her left shoulder from time to time, particularly on movements which require abduction of the shoulder. As to the left shoulder, he indicates that there was about ten degrees *408 limitation of internal rotation. There was some pain on this movement. Dr. Collier concludes by stating that he is unable to document the presence of any clinical objective evidence of any residual injury in either the patient's right knee or left shoulder and that any assessment of permanency would be completely based on the patient's continuing complaints.
In this case, defendant is not questioning the reasonableness of plaintiff's medical bills in terms of cost. In addition, it is conceded by the parties that reasonableness in terms of the statute means fairness in terms of the cost of treatment. Iavicoli, No Fault and Comparative Negligence in New Jersey, (1 ed. 1973) § 12 at 42.
Plaintiff argues that since the statutory definition of medical expense benefits contained in N.J.S.A. 39:6A-4(a) calls for the payment of all reasonable medical expenses incurred as a result of personal injury sustained in an automobile accident, that such expenses need not be "necessary" and, thus, the statute should be construed to not require that the expenses be necessary.
In order, however, to properly interpret what the Legislature meant by "medical expense benefits" in N.J.S.A. 39:6A-4(a), it is necessary to read the definition section of the New Jersey Reparation Reform Act (N.J.S.A. 39:6A-1, et seq.) contained in N.J.S.A. 39:6A-2(e). That section reads as follows:
Medical expenses means expenses for medical treatment, surgical treatment, dental treatment, professional nursing services, hospital services, rehabilitation services, x-ray and other diagnostic services, medication and other reasonable and necessary expenses resulting from the treatment prescribed by persons licensed to practice medicine and surgery, pursuant to R.S. 45:9-1, et seq. Dentistry, pursuant to R.S. 45:6-1, et seq., psychology pursuant to P.L. 1966 c. 282 (C) 45:14B-1, et seq. (or chiropractic) pursuant to P.L. 1953 c. 233 (C) 45:9-41.1 et seq. or by persons similarly licensed in other states or nations or any non-medical remedial treatment rendered in accordance with a recognized religious method of healing. [Emphasis supplied]
In his book, No Fault and Comparative Negligence in New Jersey, supra, Mario Iavicoli, commented on this particular section of the act as follows:

*409 The medical expense benefits provisions indicate that one is entitled to benefits as payment for all "reasonable medical expense". (citation omitted) The word "reasonable" preceding the words "medical expense" is superfluous. The Act in defining medical expense (citation omitted) specifically enumerates certain types of medical expense, followed by the general language "other reasonable and necessary expense" resulting from treatment prescribed by various types of physicians. Proper statutory construction supports the position that by reference, the general language infers that the specifically enumerated medical expenses must also be reasonable and necessary. The point is discussed solely because at a conference in which the Act was discussed, various individuals argued that medical expense benefits should be paid even though unnecessary, in that the benefit provisions of the Act only refers to "reasonable medical expense." Such an argument, if adopted, would result not in statutory construction but in statutory emasculation. Admittedly, the addition of the word "necessary" in the benefit provision would have provided super security as to the construction of medical expense benefits; the word "necessary" was not purposely but inadvertently omitted. [at 41]
This court finds that N.J.S.A. 39:6A-4(a) must be read in pari materia with N.J.S.A. 39:6A-2(e) and, therefore, finds that the medical expenses to be compensable must be both reasonable and necessary.
In construing, however, what the Legislature intended by the word "necessary" in relationship to medical expenses compensable under the act, the court must first attempt to discern the legislative purpose in requiring that such expenses be necessary before they are compensable.
N.J.S.A. 39:6A-16 in applicable part reads "This Act shall be liberally construed so as to effect the purposes thereof." One of those purposes is clearly the prompt and efficient payment of benefits for all accident injury victims. Maros v. Trans America Insurance Co., 76 N.J. 572, 578 (1978); Sanner v. Government Employees Insurance Co., 143 N.J. Super. 462, 467 (Super.Ct. 1976).
The duty of a court in construing a statute is to determine the manifest intent of the Legislature and should be interpreted in the context that serves the spirit of the law. The intent of a statute can be construed by an examination of its object and the nature of the subject matter, the contextual setting and the statutes in pari materia. Scholastic strictness *410 of definition cannot be adopted if it prevents a reasonable construction of a statute. The no fault legislation was designed to partially remove the fault system from automobile negligence law and to provide a minimum amount of protection to the public for injuries caused by the automobile. Newcomb Hospital v. Fountain, 141 N.J. Super. 291 (Super.Ct. 1976).
Legislation involving automobile insurance must be liberally construed to give the broadest protection to automobile accident victims consistent with the language of the pertinent statute. Brokenbaugh v. New Jersey Manufacturers Insurance Co., 158 N.J. Super. 424, 429 (App.Div. 1978). See also Cheatham v. Unsatisfied Claim and Judgment Board, 178 N.J. Super. 437, 443 (Super.Ct. 1981); 8D Appleman, Insurance Law and Practice, § 5163.
To satisfy the requisite as to whether the medical expense incurred was "necessary," one must examine the need for the treatment. Treating physicians enjoy wide discretionary latitude in determining the extent of treatment needed for a particular patient. It is not unusual to witness a genuine dichotomy of medical opinion as to the type and extent of treatment needed for a particular injury. Iavicoli, supra.
In Tillman v. Allstate Insurance Co., 154 N.J. Super. 206 (Super.Ct. 1977), the court found that the treatment rendered was necessary, based on the uncontradicted testimony of the treating orthopedic surgeon.
The court has not found nor have counsel in their briefs cited any New Jersey case specifically deciding the issue before the court.
In Victum v. Martin, 367 Mass. 404, 326 N.E.2d 12 (Sup.Jud. Ct. 1975), the Supreme Judicial Court of Massachusetts had to determine whether the threshold of $500 required by the Massachusetts No Fault Insurance Act had been met, such as to entitle plaintiff to bring an action against a motorist to recover for personal injury and pain and suffering. The court held that the adoption of the No Fault Insurance Act did not render *411 traditional judicial standards for assessing necessity of medical bills totally irrelevant. The court held that plaintiff's testimony and medical bills supported by the affidavit of a physician were sufficient for a trial court as trier of the fact to infer that the medical services rendered were necessary such that the threshold was met.
In that case, the court declined to define the term "necessary." The court indicated, however, that plaintiff must show that the treatment, which is the basis for the medical expenses did legitimately arise out of the injuries in the sense that the treatment rendered by a competent medical doctor was a bonafide effort to alleviate and ameliorate the injury. Id. 326 N.E.2d at 15.
The court commenting on a prior holding states that it had previously rejected the test that a physician's services be "in fact" necessary since events may have shown them to be unnecessary and yet they may have been wise in the light of the facts known at the time they were rendered. It, therefore, concluded that the Legislature of Massachusetts did not intend to impose a standard of absolute necessity or indispensable medical need to prove that medical expenses are necessary. The court by way of dicta indicates a policy position that a litigant may not "bootstrap" a claim for pain and suffering by running up unjustifiable medical expenses as to do so would subvert the purposes and ends of the no fault statute. Thus, it concludes that where there are indications that medical services were patently inefficient, excessively repetitious, non-conducive to producing desired medical results, were disproportionately expensive and where the injury is neither objectively visible or well defined, the necessity for medical services may be subject to more searching inquiry, including in some instances, competent medical testimony. Id. at 16.
The District of Columbia Court of Appeals in Group Hospitalization, Inc. v. Levin, 305 A.2d 248 (D.C.App.Ct. 1973) held that a medical policy providing coverage for necessary medical *412 services, including charges by a registered private duty nurse, covered services by private nurses assigned by the insured's surgeon for a post-operative period during which time the insured was in severe pain and needed constant medication to alleviate her suffering even though she was not in danger of death.
Koczka v. Hardward Dealers Mutual Fire Insurance Company, 29 Wis.2d 395, 138 N.W.2d 737 (Sup.Ct. 1966) held as a jury question whether 45 infra-red treatments administered by a physician to an insured who experienced pain in his shoulders, after his automobile was struck in the rear, was necessary and whether an excessive number of treatments was administered. That case arose out of an action to enforce the medical payments provision of an automobile liability insurance policy and did not construe the word "necessary" under the Wisconsin No Fault Act.
Support services were construed by the Supreme Court of Pennsylvania in Miller v. Johnson, 496 Pa. 290, 436 A.2d 1187 (Sup.Ct. 1981) to be included in the scope of the words "medical and dental services" as contained in Pennsylvania No Fault Motor Vehicle Act.
Carber v. Industrial Distribution Services, Inc., 297 Pa.Super. 423, 444 A.2d 104 (Super.Ct. 1982) allowed chiropractic treatment of personal injuries resulting from an automobile collision as expenses for reasonable and necessary services within the definition of Pennsylvania's No Fault Motor Vehicle Insurance Act. (Those types of services are specifically enumerated as among those services which are subject to compensation under New Jersey's Act. N.J.S.A. 39:6A-2(e)).
In the context of workers' compensation, the court in Braewood Convalescent Hospital v. Workers' Compensation Appeals Board of the State of California, 136 Cal. App.3d 95, 185 Cal. Rptr. 860 (App.Ct. 1982) found that the opinion of physicians that a worker's recovery from a work-related back injury would be benefited by a nine-month live-in, self-procured weight reduction *413 program, supported the finding that a weight reduction program would be a "reasonable medical treatment" for an industrial back injury under the California Workers Compensation Act.
In a non-medical context, "necessary expenses" of a board of education of an independent district to maintain a suitable school system, was construed by the Oklahoma Supreme Court in Kay County Excise Board v. Atchison, T. & S.F.R. Co., 185 Okl. 327, 91 P.2d 1087 (Super.Ct. 1939). The court in that case gave an expanded definition of the word "necessary." The court states:
The word "necessary" must be considered in the connection in which it is used as it is a word susceptible of various meanings. It may import absolute physical necessity, inevitability or it may import that which is only convenient, useful, appropriate, suitable, proper or conducive to the end sought.
The word "necessary" has no fixed meaning or character peculiar to itself. It is flexible and relative. It is an adjective expressing degrees and may express mere convenience or that which is indispensable or an absolute physical necessity. It may mean something which in the accomplishment of a given object cannot be dispensed with or it may mean something reasonably useful or proper and of greater or lesser benefit or convenience and its force and meaning must be determined with relation to the particular object sought and as a relative and comparative term, depending upon its application to the object sought.... [91 P.2d at 1088]
In the case at bar, defendant has denied payment of plaintiff's medical bills incurred after March 11, 1982, the date of the P.I.P. exam conducted by Dr. Neptulin. Unpaid medicals total $8,408.68. The suit is brought on behalf of plaintiff to recover payment of all medical bills outstanding to date, 10% interest on all bills and attorney fees and costs of suit.
Defendant argues that the term "necessary" should be narrowly construed as to be limited to those medical expenses which are designated toward effectuating a "cure" for an injury causally connected to an automobile accident.
Once a plateau in recovery has been reached, defendant argues such treatment rendered is palliative only, i.e., it is designed for the temporary relief of symptoms only. Such *414 treatment, it is submitted, should be deemed unnecessary and thus, not compensable.
Such a restrictive view, this court believes to be contrary to the legislative intent. Here there are subjective symptoms of pain, not deemed by licensed physicians including orthopoedic specialists, to be malingering. Therefore, therapy, heat treatments, medication, exercises and other treatment designed to relieve pain, although not designed to effectuate a cure, are within the legislative contemplation of necessary medical treatment.
The judicial trend in interpreting the legislative scheme of N.J.S.A. 39:6A-1 et seq. is toward liberal construction to effectuate the purpose behind the legislation. An analysis of the cases recited above support this view.
Here this court concludes there was not the "bootstrapping" of medical treatment warned against in Victum v. Martin, supra. This is evidenced by the battery of diagnostic tests plaintiff permitted herself to be subjected to by her treating physicians, some of them painful in and of themselves. There is evidence that during those periods of time when her symptoms seemed to subside, that plaintiff sought less treatment or discontinued it for a period of time. Thus, excessive repetition of medical treatment is not present. Nor, is the temporary relief of pain that such treatment produced patently ineffective medical treatment.
Here, the treating physicians, after plaintiff had reached a plateau in terms of recovery from an injury causally related to her automobile accident, nonetheless concluded that treatment would still benefit her in terms of effective relief from the painful symptoms resulting from said injury. The expenses resulting from said treatment, which are admittedly reasonable in terms of cost, and which I find to be conducive to producing the palliative relief from the symptoms for which they are prescribed, are deemed necessary medical expenses as that is defined in N.J.S.A. 39:6A-4 and N.J.S.A. 39:6A-2(e).
*415 Pursuant to N.J.S.A. 39:6A-5(b), personal injury protection coverage benefits shall be overdue if not paid within 30 days after the insurer has been furnished written notice of the fact of a covered loss and the amount of same. N.J.S.A. 39:6A-5(c) provides that all overdue payments shall bear simple interest at the rate of 10% per annum. That statute was amended, effective October 4, 1983, to provide that all overdue payments shall bear interest at the percentage of interest as prescribed in the Rules Governing the Courts of New Jersey for judgments, awards and orders for the payment of money. Pursuant to R. 4:42-11, the current rate of interest is at 12% per annum. As the term "simple interest" has been deleted by the statute as amended, the Legislature must have intended by its deletion to allow interest to be compounded after October 4, 1983.
Counsel for plaintiff also seeks reasonable counsel fees in connection with the collection of the personal injury protection benefits sought here. In this case, defendant argues that interest and counsel fees should not be allowed because in contesting the issue of "reasonable and necessary," it held a reasonable belief that it was not reasonable to pay the claim. Thus, it would be inequitable for interest to be assessed on the judgment or to allow counsel fees. Clay v. New Jersey Special Joint Underwriting Ass'n., 160 N.J. Super. 188 (App.Div. 1978).
However, the determining factor with respect to the payment of interest when an insurance carrier interposes a defense to an action is not the good faith or the bad faith of the carrier in asserting the defense but the objective merit of the defense, however it is ultimately decided. Hopkins v. Liberty Mutual Insurance Co., 158 N.J. Super. 176 (App.Div. 1978).
Since this court has determined that there was no objective merit in the defense for the reasons expressed above, interest will be computed at the annual rate of 10% from 30 days after the insurer was furnished written notice of the fact of the covered losses, making up the total of $8,408.68 in unpaid *416 medicals stipulated to by and between counsel. Simple interest will be allowed until October 4, 1983, after which date, all overdue payments shall bear interest, which may be compounded, at the percentage rate of 12%.
Counsel for Ohio Casualty Insurance Company, cites Vesley v. Cambridge Mutual Fire Insurance Company, 189 N.J. Super. 521 (App.Div. 1981), aff'd 93 N.J. 323 (1983) for authority that under R. 4:42-9(a)(6) no counsel fees are allowable. Vesley was an action appealing the awarding of counsel fees and disbursements against an insurer for a fire casualty loss under a homeowner's policy issued by defendant to plaintiff.
The Appellate Division in a per curiam opinion expressed the view that R. 4:42-9(a)(6) does not authorize the allowance of counsel fees to an insured in a direct suit brought against his insurance carrier to enforce casualty type direct coverage. In his dissent, Judge Francis cites Maros v. Trans America Insurance Company, 76 N.J. 572, 579 (1978) as authority for the allowance of counsel fees in appropriate first party actions against P.I.P. insurance companies. He points out in his dissent that in Maros, the Supreme Court cited with approval Corcoran v. Hartford Fire Ins. Co., 132 N.J. Super. 234, 244-245 (App.Div. 1975).
The judgment of the Appellate Division in Vesley was affirmed as the members of the Supreme Court were equally divided. It, thus, has no Supreme Court precedent value.
As Vesley was not a P.I.P. case and because there is Supreme Court authority in Maros favorably upholding the awarding of counsel fees as a matter of judicial discretion in a case involving entitlement to personal injury protection benefits, this court finds that awarding counsel fees are within its discretion in this case and elects to do so.
Counsel for plaintiff has submitted an affidavit of services based on an hourly rate of $100 which this court believes to be fair and reasonable. I shall, therefore, award counsel fees against defendant and in favor of plaintiff in the amount of *417 $1790 as well as costs representing actual disbursements in the amount of $123.12 or a total of $1913.12. Counsel for plaintiff will submit an order for judgment in conformance with this opinion.