206 N.J. Super. 365 (1985)
502 A.2d 1162
EULA LANGLEY A/K/A OLAVEE LANGLEY, PLAINTIFF-APPELLANT,
v.
ALLSTATE INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 10, 1985.
Decided December 24, 1985.
*366 Before Judges PRESSLER, BILDER and GRUCCIO.
Arnold C. Friedman argued the cause for appellant (Caryl W. Leightman, on the brief).
John P. McGee argued the cause for respondent (McDermott, McGee & Ruprecht, attorneys; John P. McGee, on the brief).
The opinion of the court was delivered by BILDER, J.A.D.
Derrick Campbell died as a result of an automobile accident which occurred on September 5, 1980. His mother, plaintiff Eula Langley made claim for personal injury protection (PIP) benefits to defendant Allstate Insurance Company. Although her general right to receive benefits was initially contested, it is now acknowledged. Following institution of suit, she was paid funeral and essential services benefits. At issue are survivor *367 benefits under N.J.S.A. 39:6A-4b. The question is whether her son, Derrick Campbell, was an "income producer" within the meaning of the PIP statute, N.J.S.A. 39:6A-2d and 39:6A-4b.
Following a nonjury trial, the judge found the plaintiff had failed to meet her burden of proving the decedent was an "income producer" at the time of his death and denied her survivor benefits. On appeal she contends the decision was against the weight of the evidence and that the trial judge abused his discretion in denying her a new trial which would have permitted the production of new evidence of Derrick's active employment as a bartender at the time of his death.
Apart from Derrick's employment activities during the last few months of his life, the factual background seems uncontroverted. Allstate has stipulated that it issued the policy to plaintiff and that her son was a resident in her household at the time of the automobile accident.
Eighteen-year old Derrick lived in Newark with his mother and sister. He graduated from high school sometime in 1979 and a few months later went to work for Wiggins Plastic, Inc. in Clifton. He worked there from February 14, 1980 until July 8, 1980, about two months before his death, at a salary of $150 per week. According to his mother, he immediately then went to work as a bartender at Hawaii-Five-O, a Newark tavern in which his father, Cleatis Campbell, had some interest. No application for unemployment benefits was made with respect to the loss of his job at Wiggins Plastic.
Plaintiff testified Derrick contributed $30 per week towards family expenses from the commencement of his employment at Wiggins Plastic until his death. Unlike the verified employment at Wiggins Plastic, plaintiff's proofs as to Derrick's subsequent work were undocumented. Plaintiff sought to testify that Derrick told her about his tavern job, see Evid.R. 63(32), and successfully testified as to a daily routine commensurate with employment, the continued $30 contributions and to seeing him working at the bar on a number of occasions in July *368 and August. These later viewings were corroborated by the testimony of her cousin, Lenora Green. In explanation of her inability to furnish evidence of his tavern job by way of documentary evidence or employer verification, plaintiff testified that she understood from Derrick that he was being paid "under the table" and therefore no documentation existed and no verification would be forthcoming. She didn't even attempt to obtain aid from the tavern.
I figured that it wouldn't make any sense, since he was getting paid off the books. I didn't figure that he would give me a record.
The statute under which plaintiff claims benefits provides for income continuation benefits to members of the family for "the payment of the loss of income of an income producer" as the result of his or her death. N.J.S.A. 39:6A-4b. An "income producer" is defined as "a person, who at the time of the accident causing ... death, was in an occupational status, earning or producing income." N.J.S.A. 39:6A-2d. Allstate does not deny plaintiff would be entitled to income continuation benefits as a result of Derrick's death if he was an income producer; it denies he was an income producer. The burden of establishing entitlement is on the plaintiff. See Miltner v. Safeco Ins. Co. of America, 175 N.J. Super. 156, 158 (Law Div. 1980).
Who an "income producer" is within the meaning of N.J.S.A. 39:6A-2d and 39:6A-4b has been established by our Supreme Court in Gambino v. Royal Globe Ins. Co., 86 N.J. 100 (1981). He or she is a person "who, as part of [his or her] normal and prevailing way of life [is] gainfully engaged in work that generates income, but [is] foreclosed from such normal endeavors or preempted from that usual status because of injuries incurred in an automobile accident." Id. at 109. The term encompasses "all persons meaningfully and concretely engaged in or committed to an occupational way of life, one that regularly and normally involves working for pay." Ibid. This includes individuals who are on sick or vacation leave without pay, are on a non-permanent leave of absence, temporarily *369 laid-off or even receiving unemployment benefits. Id. at 109-110. Excluded are those who, by choice or disability unrelated to the accident, would not have desired or been capable of employment even without the accident. Id. at 110. "The completely retired, the unemployable and those who have never been or planned to be a part of the workforce or have permanently removed themselves from the ranks of the gainfully employed are excluded from coverage." Ibid. In general economic terms, the Supreme Court has defined an income producer as one who is part of the work force although not necessarily actively working at the time. It includes the unemployed as well as the employed  as long as they retain a substantial interest in employment.
Although lip service was paid to the mandate of Gambino that plaintiff's claim was to be tested on Derrick's general status as an income producer, it was tried and decided primarily on his particular status as an active employee at the time of his death. The case turned on whether he was a paid employee of the Hawaii-Five-O Bar. This was clearly Allstate's position  it required employment verification as a condition precedent to recognition of an income continuation claim.
Plaintiff's proofs on the issue of Derrick's final employment were totally dependent upon her credibility as a witness. Even though uncontradicted, it could be rejected by the trier of fact. See Ferdinand v. Agricultural Ins. Co. of Watertown, N.Y., 22 N.J. 482, 494 (1956). From an examination of the record, it would superficially appear that the court's conclusion on this score could reasonably have been reached, considering the proofs as a whole and the judge's opportunity to see and hear the witnesses. See State v. Johnson, 42 N.J. 146, 162 (1964). On the other hand, we are not satisfied that the trial judge considered whether the proofs as a whole demonstrated whether the decedent occupied the general status of an income producer. His successful graduation from high school and relatively prompt employment in Clifton bespeak an intention to be part of the work force. His unexplained failure to seek *370 unemployment benefits suggests subsequent employment of some nature. The trial judge was properly concerned with plaintiff's failure to obtain information verifying Derrick's employment at the bar. However, his conclusion that she never offered any explanation for her failure to do so is not supported by the record. To the contrary, as we have already noted, she understood Derrick was being paid under the table in violation of state and federal laws. If her story is to be believed, she was trapped by an underground sub-culture of illegal wage payments which cheats government of taxes and deprives employees of social security benefits and minimum wage protections. Such illegal conduct by employers should not serve to deprive individuals of benefits properly owing from an insurance company.
Following the entry of judgment, plaintiff made a motion for a new trial to permit the introduction of new evidence. See R. 4:49-1. Certifications attached to the motion showed that she sought to introduce testimony of Cleatis Campbell that he had a financial interest in Hawaii-Five-O and that Derrick was employed at the bar at a salary of $150 per week. She also proposed to produce a copy of a Division of Alcoholic Beverage Control Form E-141-A, apparently obtained from Campbell, listing the bar's employees and containing Derrick's name. In his certification, Campbell acknowledged his earlier refusal to aid plaintiff.
In order to succeed in obtaining her new trial, plaintiff had the burden of showing that the new evidence would probably alter the judgment, that it was unobtainable by the exercise of due diligence, and that the evidence was not merely cumulative. See Quick Chek Food Stores v. Springfield Tp., 83 N.J. 438, 445 (1980). The burden of showing diligence is a substantial one. Id. at 446. The motion is addressed to the sound discretion of the trial court and will not be disturbed unless that discretion has been clearly abused. Ibid.
In his oral opinion on the motion for a new trial, the trial judge clearly understood these principles and applied them in a *371 way with which we normally could find no basis for disagreement. Under the peculiar circumstances of this case, however, the decision as to a new trial to consider additional evidence must be viewed in the context of the court's failure to consider whether the proofs as a whole demonstrated whether Derrick occupied the general status of an income producer and the particular difficulty which confronted plaintiff in attempting to obtain information which collaterally would evidence violations of federal and state tax and social security laws. The trial judge's decision was based upon a finding that plaintiff's evidence lacked credibility. Credible evidence of Derrick's employment at the bar would change the result. At the time of trial, Campbell's availability as a credible witness on plaintiff's behalf did not exist in a meaningful sense. According to the argument of Allstate's counsel at the time of the motion, Campbell denied the employment when interviewed by its representative. Viewing all these considerations in a cumulative way, we conclude that substantial justice requires reversal of the denial of plaintiff's motion for a new trial to produce additional evidence.
Reversed and remanded for a new trial.