236 N.J. Super. 287 (1989)
565 A.2d 728
CARL W. CAVAGNARO, ADMINISTRATOR AD PROSEQUENDUM, FOR THE ESTATE OF MICHAEL MYRONOWSKYJ, PLAINTIFF,
v.
HANOVER INSURANCE COMPANY, INC., DEFENDANT.
Superior Court of New Jersey, Law Division Cumberland County.
Decided August 10, 1989.
*289 Jacob Cheli for plaintiff (Reuss & Cavagnaro, attorneys).
Thomas L. Grimm for defendant (Horuvitz, Perlow, Morris & Pirolli, attorneys).
KLEINER, J.S.C.
The novel question posed in this motion for summary judgment is whether hospital expenses incurred subsequent to confirmation of irreversible brain death are compensible under the New Jersey no fault act, N.J.S.A. 39:6A-4.
On January 2, 1985, Michael Myronowskyj (hereafter Michael), age 14, was a passenger in a motor vehicle operated by his mother, Stephanie Myronowskyj, which was involved in a collision with another vehicle. Michael's mother was fatally injured, and he was admitted to the Newcomb Medical Center in *290 a comatose condition. Michael suffered multiple injuries including an acute subdural hemotoma and brain contusion.
Dr. John C. O'Donnell, a neurosurgeon, as the attending physician, testified at depositions, and provided a written report, indicating that, initially, Michael's medical condition improved after emergency surgery; however, he then suffered a tremendous elevation in intracranial pressure. Efforts to decrease the swelling of Michael's brain were unsuccessful and his condition deteriorated. Throughout his hospitalization, Michael was maintained on a respirator-life-support system.
Dr. O'Donnell, in consultation with a neurologist, rendered a clinical diagnosis that Michael suffered irreversible brain death. An electroencephalogram performed on January 11, 1985, confirmed the absence of brain activity, i.e., electrocerebral silence. Thus, Dr. O'Donnell opined that Michael had suffered brain death as of January 11, 1985.
On or before that date, Dr. O'Donnell began conferring with Michael's family members about the advisability of organ donation. Certain family members believed that organ donation was appropriate while other family members disagreed. This highly sensitive decision was never resolved, as Michael's blood pressure deteriorated and he was formally pronounced dead on January 23, 1985, and the life-support systems were removed.
It is uncontradicted that the maintenance of Michael on life-support systems after January 11, 1985, was for the sole purpose of maintaining Michael's organs so they could be harvested for transplant in the event his surviving relatives agreed with this procedure.
On January 31, 1985, proper application for personal  injury  protection benefits (PIP) was made by plaintiff to defendant, Hanover Insurance Company. The total medical and hospital expenses incurred by plaintiff were $35,388.70. Defendant, Hanover Insurance Company, has paid on behalf of plaintiff's application for PIP benefits only those expenses incurred up to and including January 11, 1985. Defendant has declined *291 to pay the expenses incurred subsequent to January 11, 1985, which total $10,615.08 and now moves for summary judgment.
Defendant contends that it is entitled to summary judgment because medical expenses incurred subsequent to the confirmation of irreversible brain death are not incurred for the purpose of treatment of plaintiff's decedent as intended under the New Jersey no fault act.
The New Jersey no fault act provides for the payment of all reasonable medical expenses incurred as a result of personal injury sustained in an automobile accident. N.J.S.A. 39:6A-4a. The term "medical expenses" is defined at N.J.S.A. 39:6A-2e as follows:
"Medical expenses" means expenses for medical treatment, surgical treatment ... hospital services... and other reasonable and necessary expenses resulting from the treatment prescribed by persons licensed to practice medicine and surgery .... [Emphasis supplied]
Sections 4(a) and 2(e) must be read in pari materia and, therefore, in order for medical expenses to be compensible they must be both reasonable and necessary. Miskofsky v. Ohio Cas. Ins. Co., 203 N.J. Super. 400, 409 (Law Div. 1984). Implicated in this analysis is the fundamental question of whether the medical steps and procedures utilized in this case constitute "treatment" within the intendment of the controlling legislation. "Treatment" obviously encompasses a range of therapeutic measures designed or intended to ameliorate a patient's condition or to prevent, or mitigate, the deterioration of that condition. This conclusion may be gleaned from the many decisions in which the courts have been confronted with similar issues.
"Medical treatment is given to preserve life and relieve the patient as much as possible from pain and disability whether physical or mental." Squeo v. Comfort Control Corp., 194 N.J. Super. 366, 368 (App.Div. 1984), aff'd 99 N.J. 588 (1985). It may encompass providing an amalgam of services or benefits to an injured patient, if "medically necessary to [plaintiff's] existence." Paul v. Ohio Cas. Ins. Co., 196 N.J. Super. 286, 292 *292 (App.Div. 1984), certif. den. 99 N.J. 228 (1985). Included within the definition is "treatment which is for palliative relief of symptoms, although not designed to effectuate a cure...." Miskofsky v. Ohio Cas. Co., supra at 407.
A medical "need" is shown if the treating physician orders tests based upon a sincere belief that the procedure, even if controversial, will further the diagnosis, or treatment, of a patient's condition. Thermographic Diagnostics v. All-state, 219 N.J. Super. 208 (Law Div. 1987).
In the present case, after January 11, 1985, the hospital expenses incurred in maintaining and continuing life-support systems after the confirmation of irreversible brain death were not incurred to "preserve life and relieve the patient as much as possible from pain and disability," Squeo v. Comfort Control Corp., supra, nor were the expenses incurred in a "bona fide effort to alleviate and ameliorate the injury sustained," Miskofsky v. Ohio Cas. Co., supra. Additionally, they were not incurred pursuant to a physician's sincere belief that diagnosis or treatment would be enhanced. Thermographic Diagnostics v. Allstate, supra.
New Jersey's legal definition of death includes "brain death." Strachan v. John F. Kennedy Memorial Hospital, 109 N.J. 523, 513-533 (1988). The Court in Strachan, noted that section one of the Uniform Determination of Death Act (UDDA) defines death:
§ 1. [Determination of Death]
An individual who has sustained either (1) irreversible cessation of circulatory and respiratory functions, or (2) irreversible cessation of all functions of the entire brain, including the brain stem, is dead.... [at 533]
See also In re Quinlan, 70 N.J. 10, 27-28 (1976), cert. den. 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976); State v. Watson, 191 N.J. Super. 464 (App.Div. 1983), certif. den. 95 N.J. 230 (1983).
Thus, as of January 11, 1985, plaintiff's decedent was legally dead. The maintenance of Michael's body on life-support *293 systems was designed solely to permit eventual organ transplant if surviving relative consent was obtained and not for "medical treatment" within the intendment of the New Jersey no fault act, N.J.S.A. 39:6A-4(a) and 2(e). Hospital expenses incurred after a determination of irreversible brain death are therefore not reimbursable from personal-injury-protection insurance coverage. All medical procedures utilized in reaching the ultimate brain death diagnosis, however, are reimbursable under the decedent's personal-injury-protection coverage.[1] Summary judgment shall be granted pursuant to defendant's motion.
NOTES
[1] An unanswered question will arise as to the responsibility for the payment of non-reimbursables post January 11, 1985 expenses. That question must be answered in a proceeding where the Newcomb Hospital attempts to collect that debt from the decedent's estate. The hospital is not a party to this litigation and that question has not been argued before this court.