244 N.J. Super. 695 (1990)
583 A.2d 409
CAROLE ELKINS, PLAINTIFF-APPELLANT,
v.
NEW JERSEY MANUFACTURERS INSURANCE CO., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 27, 1990.
Decided December 12, 1990.
*696 Before Judges O'BRIEN, SCALERA and KEEFE.
Marc J. Bressler argued the cause for appellant.
George W. Connell argued the cause for respondent, Connell, Foley, Geiser, attorneys, (Heidi Willis Currier, on the brief).
The opinion of the court was delivered by SCALERA, J.A.D.
This appeal requires us to further explain the circumstances under which personal injury protection (PIP) benefits in an automobile insurance policy are to be paid.
Plaintiff Carole Elkins was injured in an automobile accident on November 4, 1982, at which time defendant New Jersey Manufacturers Insurance Company (NJM) provided her with PIP benefits in her automobile liability policy. N.J.S.A. 39:6A-4. The evidence indicated that those injuries resulted in a loss of vision in her left eye. In addition to other doctors whose bills are not in question, soon after the accident she went to a chiropractor, Dr. Thomas Anthony Picone, for treatment of pain she experienced as a result of that vision problem. She still is being treated by Dr. Picone.
Plaintiff's complaints to her neck, eyes, temples and scalp apparently are correlated to driving and work activities. Plaintiff has no peripheral vision and she assertedly drives with one eye closed because of sensitivity to light, thereby requiring her to constantly turn her neck and body. She has two sons and is frequently required to drive her younger son to his many activities. She attends to her household bills and owns a tennis pro shop which requires her to engage in extensive office *697 duties. Performance of these various duties results in neck pain, due to the constant need to lean over to read, etc.
Dr. Picone has treated plaintiff continuously for over seven years. She goes to him whenever she feels it is necessary to relieve the pain. Some weeks she visits him five times and other weeks, only once or not at all. Dr. Picone's treatments do relieve her pain, but the extent and time period of such relief varies, apparently depending on her subsequent activity. She visits Dr. Picone when the pain begins in an attempt to alleviate it before it becomes severe. The intensity of the pain has become worse over the years. Prior to the automobile accident, she never experienced neck pain.
Dr. Picone testified on her behalf and corroborated his continuous treatment for those many years. Prior to April 5, 1988, his charges for chiropractic treatment had been duly paid by NJM. However, NJM ceased making payments to him after that time notwithstanding that Dr. Picone has continued to treat the plaintiff. He corroborated that plaintiff has no scheduled or standing appointment but calls him if she is in pain. Dr. Picone confirmed that her pain is exacerbated by driving, physical exertion and paperwork. In fact, when reading plaintiff is forced to keep one eye "severely tightly" closed to avoid double vision which in turn, causes spasms in her neck and scalp muscles. Moreover, her restricted field of vision requires her to turn her head at severe angles, thereby causing extensive strain on her musculature.
Treatments by Dr. Picone have varied and have included passive resistant isometric exercises, ice, moist heat, deep tissue massage, chiropractic adjustments, cervical collars, supportive bracing, cervical overhead traction, muscle stimulation, ultrasound and inferential currents. She has been given a theorosizer for use at home to perform exercises designed to rehabilitate the shoulder and neck muscles. Each treatment has provided plaintiff some relief from her pain, which can last for as long as several days or as short as several minutes. Dr. *698 Picone has noted no neurological complaints calling for diagnostic testing and has never recommended that plaintiff be examined by an orthopedist. He opined that plaintiff will require ongoing palliative and symptomatic pain relief. Regarding his fees, the charge for each visit varies between $30 and $45, depending upon the length of the visit and the type of therapy provided. He claimed that the treatments in dispute are both necessary and reasonable medical expenses and implied that, in light of her present conditions, they would continue indefinitely.
Dr. Roman George Kernitsky, an ophthalmologist, treated plaintiff for the eye injury on the day of the accident. He diagnosed a perforating injury to the cornea of the left eye and the lens inside the eye. He performed cateract surgery and made extensive surgical repairs. As a result, plaintiff needs very strong contact lens and her left eye is sensitive to indoor and outdoor light. He confirmed that plaintiff's lack of proper peripheral vision requires her to constantly turn her head. Therefore, he felt that chiropractic treatments are necessary and beneficial to relieve the consequent strain in her muscular system. He explained that the only possible permanent treatment for the plaintiff is a corneal transplant. However, she is not presently a candidate for such. Moreover, the new cornea can fail or be rejected and a serious risk of hemorrhaging and infection exists.
Only Dr. Louis W. Barile, a chiropractor, testified for NJM. He initially examined the plaintiff in August, 1984 at which time she complained of headaches and neck pain. At that time he felt plaintiff should continue with chiropractic care every two weeks due to the traumatic injury to her neck. Dr. Barile conducted another examination in May, 1986 and recommended continuation of chiropractic care twice a month.
He next saw plaintiff in April of 1987, at which time she presented the same condition, continued to be treated by Dr. Picone and received accupuncture once a week and therapeutic massages twice weekly. At that point, Dr. Barile was of the *699 opinion that, although the neck injury was permanent, chiropractic treatment was not therapeutically beneficial because her condition was not improving. In fact, he felt it was getting worse. He described the chiropractic treatment as being only palliative, making her feel better temporarily. At trial he also indicated that instead, plaintiff should be using hot packs, cervical traction and exercising at home. He felt the plaintiff should have then been "weaned" off of chiropractic treatment. Dr. Barile conceded that while plaintiff's driving aggravated her neck injury and Dr. Picone's treatments helped to alleviate such pain, she could get the same care by utilizing home treatment.
In a written opinion the trial judge found that since April 5, 1988 plaintiff's chiropractic visits have been "not an effective treatment and [have] no therapeutic benefit." He pointed out that such treatment is only palliative in nature and she "can get the same relief by use of exercises and home treatment." Furthermore, he came to the conclusions that the treatments in this case are "grossly excessive and repetitious" and that plaintiff has made no effort to "cure" her condition. Therefore, he determined that Dr. Picone's fees after April 5, 1988 should no longer be reimbursable under the PIP policy provisions.
The New Jersey No-Fault Act (Act) provides for payment of all reasonable and necessary medical expenses incurred as a result of personal injury sustained in an automobile accident. Paul v. Ohio Cas. Ins. Co., 196 N.J. Super. 286, 295, 482 A.2d 199 (App.Div. 1984), certif. denied 99 N.J. 228, 491 A.2d 718 (1985). Under N.J.S.A. 39:6A-2e, such medical expenses are defined as
... [E]xpenses for medical treatment, surgical treatment, dental treatment, professional nursing services, ... prosthetic devices, ambulance services, medication and other reasonable and necessary expenses resulting from the treatment prescribed by persons licensed to practice medicine and surgery ... or chiropractic ... or by persons similarly licensed in other states and nations or any non-medical remedial treatment rendered in accordance with a recognized religious method of healing. [Emphasis supplied].
*700 Unquestionably, the Act is to be liberally construed to effect the prompt and efficient payment of benefits for victims of auto accidents. N.J.S.A. 39:6A-16; Maros v. Transamerica Ins. Co., 76 N.J. 572, 578, 388 A.2d 971 (1978). Notwithstanding this requirement, however, in order to be compensable such medical expenses must be both reasonable and necessary. Paul v. Ohio Cas. Ins. Co., supra, 196 N.J. Super. at 295, 482 A.2d 199.
In the instant case, the trial judge first seemed to have held that since plaintiff's treatment was only palliative in nature, it was not covered under the statute. However, we disagree with such a conclusion. Although only a few decisions deal with the issue of palliative care under no-fault legislation, such care may well be compensable, provided it meets the other statutory requirements.
In Miskofsky v. Ohio Cas. Ins. Co., 203 N.J. Super. 400, 413-414, 497 A.2d 223 (Law Div. 1984), overruled on other grounds in Simon v. CNA Ins. Co., 225 N.J. Super. 606, 543 A.2d 110 (App.Div. 1988), certif. denied 113 N.J. 350, 550 A.2d 461 (1988), the court correctly observed that palliative treatments, designed only to temporarily relieve symptoms may constitute necessary medical treatment. To conclude otherwise, in an appropriate case, would contravene the clear legislative intent. Accord Cavagnaro v. Hanover Ins. Co. Inc., 236 N.J. Super. 287, 292, 565 A.2d 728 (Law Div. 1989). Thus, covered "treatment" may well encompass a range of therapeutic measures intended only to ameliorate a patient's symptoms. In other words, reasonable and necessary medical treatment appropriately may be rendered to preserve life or simply to relieve the patient from physical pain. Id. at 291, 565 A.2d 728.
That was the situation which appears to have existed here, especially in light of the cogent evidence that the only permanent "cure" available was for plaintiff to undergo a risky corneal transplant. The chiropractic treatments plaintiff received, at least for the time reimbursed by NJM, concededly *701 were effective in temporarily alleviating her pain, although not rendered in an attempt to effectuate a cure.
However, the other issue to be resolved here was whether such continued palliative treatment also was medically reasonable and necessary. Miskofsky v. Ohio Cas. Ins. Co., supra, 203 N.J. Super. at 409, 497 A.2d 223. It was plaintiff's burden to establish such by a preponderance of the evidence. Miltner v. Safeco Ins. Co., 175 N.J. Super. 156, 417 A.2d 1089 (Law Div. 1980); see also Langley v. Allstate Ins. Co., 206 N.J. Super. 365, 502 A.2d 1162 (App.Div. 1985) (Burden of establishing entitlement to survivor benefits is on the insured.)
In Miskofsky, the plaintiff suffered soft tissue injuries to her neck, shoulders, knee and elbow. She was initially treated with physical therapy twice a week for approximately eight months and then less frequently, and ultimately ceased physical therapy completely some 15 months after the accident. During that time frame, plaintiff was treated by an orthopedic specialist who sent her for physical therapy treatments on an "as needed" basis. In determining the necessity of that patient's palliative treatments, the Miskofsky court correctly pointed out that, "[t]reating physicians enjoy wide discretionary latitude in determining the extent of treatment needed for a particular patient. It is not unusual to witness a genuine dichotomy of medical opinion as to the type and extent of treatment needed for a particular injury." Id. 203 N.J. Super. at 410, 497 A.2d 223. It was held in that case that although a plateau in her recovery had been reached, the treatment was still effective to relieve her pain. Id. at 413-414, 497 A.2d 223. The patient's treatment was not excessively repetitious nor patently ineffective under the circumstances.
However, that court also properly cautioned against accumulating unjustified medical expenses, which may have the effect of subverting the purpose of the no-fault statute. Id. at 414, 497 A.2d 223; see Victum v. Martin, 367 Mass. 404, 326 N.E.2d 12, 16-17 (1975) ("... [I]ndications that the medical services *702 were patently inefficient, excessively repetitious, not conducive to producing desired medical results ... may be subject to more searching inquiry.")
In Thermographic Diagnostics v. Allstate Ins. Co., 219 N.J. Super. 208, 530 A.2d 56 (Law Div. 1987) the court was faced with determining the medical necessity of neuromuscular thermography and noted that the necessity for incurring medical expenses ordinarily should be decided by the treating physician. "It should not be the province of the Judiciary to decide, in the face of conflicting expert medical testimony, highly complex questions of medicine and science." Id. at 227, 530 A.2d 56. However, abuse of such a treating physician's judgment can and should receive individual scrutiny and review by a court. Id. at 228, 530 A.2d 56.
In the instant case, the trial judge also determined that the chiropractic care for which plaintiff had sued was unnecessary and unreasonable. He found that essentially she could receive the same relief through the use of home exercise and treatment. In this regard, the testimony was clear that Dr. Picone had made no effort to wean her from his care and likewise there was no attempt to have her substitute effective home remedies. The trial judge found totally credible Dr. Barile's testimony that the chiropractic treatment then being rendered was ineffective and of no therapeutic value and that the same benefits could be achieved by home care. Therefore, he concluded that such chiropractic treatments were "grossly excessive and repetitious."
A trial court's factual findings and legal conclusions should not be disturbed on appeal unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974). On that basis we conclude that there was sufficient credible evidence in this record to support the trial judge's finding that plaintiff could have received *703 the same effects to relieve her symptoms at home which she was getting from Dr. Picone's professional treatment. Therefore, the treatments were not necessary medical expenses.
Parenthetically, we do note that plaintiff obviously could not get the equivalent of chiropractic adjustments through such home treatments. However, there was no evidence produced that this particular professional treatment was any more beneficial in relieving her pain than the treatment modalities she could have utilized at home. Therefore, the trial court correctly concluded that the chiropractic care rendered by Dr. Picone was "grossly excessive and repetitious" and therefore, was unnecessary and unreasonable.
In sum, PIP benefits were correctly discontinued here, not because the treatments were palliative in nature, but because the medical expenses were neither necessary nor reasonable within the PIP requirements of the No-Fault Act, N.J.S.A. 39:6A-4a.
Affirmed.