**Glenda VERSLUIS, Plaintiff and Appellant,**

v.

**GUARANTY NATIONAL COMPANIES, Defendant and Appellee.**

No. 900409.

Supreme Court of Utah.

Oct. 30, 1992.

Theodore E. Kanell, Jaryl L. Rencher, Salt Lake City, for Guar. Nat. Companies.

Robert B. Breeze, Salt Lake City, for Glenda Versluis.

STEWART, Justice:

Plaintiff Glenda Versluis appeals from a summary judgment denying her no-fault disability benefits under Utah Code Ann. § 31A–22–307(1)(b)(i). We affirm.

On the evening of February 1, 1989, plaintiff was injured in an automobile accident. Dr. Joseph Valley examined her the following day and prescribed pain medication. X rays taken on a subsequent visit to Dr. Valley showed no sign of injury. Plaintiff later visited her own physician, Dr. Dan Henry, who prescribed pain medication and told her to exercise. Plaintiff stated in her deposition that Dr. Henry told her not to work, but he did not say for how long and did not indicate a disability or impairment rating. Plaintiff consulted a chiropractor and two other physicians. The physicians characterized her injuries as soft tissue damage, but neither told her not to work and neither indicated a disability or impairment rating.

Plaintiff filed a claim for no-fault disability benefits with defendant Guaranty National Companies. Guaranty National refused to pay on the ground that plaintiff was unemployed at the time of the accident and during the preceding thirteen months.

Plaintiff's employment record shows significant periods of unemployment. She worked from 1977 to 1979 and quit when she had her first child. She worked again from 1981 until 1983, when she quit because of personality problems with her supervisor and because she wanted to provide full-time care for her child. Thereafter, she was employed from December 1985 until April 1986 and from June 1986 until February 1987. From March 1987 through May 1987, she received unemployment benefits. She then received welfare assistance until well after the date of the accident. During 1988, she did not look for work, although she briefly sought employment in January 1989.

Sometime after the accident, plaintiff worked for two days at the Utah Auto Auction. A friend who was employed there told her that she could work whenever she wanted. The record does not indicate why plaintiff did not continue working there, how many hours she could have worked, or what income she would have earned.

The issue in this case is whether plaintiff is entitled to disability benefits under no-fault personal injury protection, or "PIP," for "the lesser of $250 per week or 85% of *any loss of gross income and loss of earning capacity* per person from inability to work, for a maximum of 52 consecutive weeks after the loss...." Utah Code Ann. § 31A–22–307(1)(b)(i) (1986 & Supp.1988) (emphasis added). Disability benefits are payable, regardless of fault, to anyone injured in an insured vehicle. Utah Code Ann. § 31A–22–308.

Plaintiff asserted in her verified complaint that she is entitled to disability benefits because her claimed inability to work resulted in a loss of "earning capacity" as that term is used in section 31A–22–307(1)(b)(i).

The parties filed cross-motions for summary judgment. The trial court denied plaintiff's motion and granted Guaranty National's motion on the ground that section 31A–22–307(1)(b)(i) requires a claimant to prove *both* a loss of wages and a loss of earning capacity to qualify for no-fault disability benefits. The court stated that plaintiff had not been employed for the thirteen months preceding the accident and had presented no facts showing that she had suffered an actual loss of gross income.

Plaintiff argues on appeal that section 31A–22–307(1)(b)(i) should be read disjunctively to provide benefits for either a loss of "gross income" or a loss of "earning capacity" and that she is entitled to disabili-

ty benefits even though she was unemployed at the time of the accident.

Guaranty National contends that the statute requires proof of both a loss of income and a loss of earning capacity and that plaintiff is not entitled to PIP disability benefits because she has suffered no loss of earnings and has not raised an issue of fact as to either her inability to work or her loss of earning capacity.

■ Because this is an appeal from a summary judgment, we review the factual submissions to the trial court in a light most favorable to finding a material issue of fact. *King v. Searle Pharmaceuticals, Inc.*, 832 P.2d 858 (Utah 1992). In this case, it is not disputed that plaintiff was not working at the time of the accident. Furthermore, there is no evidence that plaintiff had a reasonably certain prospect of employment that she would have accepted had the accident not occurred.

■ When construing a statute, we must give effect to legislative intent, *West Jordan v. Morrison*, 656 P.2d 445, 446 (Utah 1982). To that end, we presume that the Legislature used each term advisedly, and we give effect to each term according to its ordinary and accepted meaning. *Id.* For assistance in ascertaining the meaning of statutory language, we look to the background and general purpose of the statute. *Jamison v. Utah Home Fire Ins. Co.*, 559 P.2d 958, 959 (Utah 1977).

■ The No-fault Automobile Insurance Act was enacted "[t]o effectuate a more efficient, equitable method of handling the greater bulk of the personal injury claims that arise out of automobile accidents." Utah Code Ann. § 31–41–2 (1974). PIP benefits are intended to provide immediate compensation for out-of-pocket expenses and actual loss of earnings incurred as a result of an accident without having to bring a lawsuit. *See Jamison*, 559 P.2d at 959. Unlike an award of damages based on negligence, PIP disability benefits are paid monthly so that claimants can continue to meet basic living expenses. Utah Code Ann. § 31A–22–309(5). PIP benefits were not intended "to provide an automatic reward or a 'windfall,' for being involved in

an accident by requiring payment when there was no loss actually suffered...." *Jamison*, 559 P.2d at 960. Although *Jamison* dealt with PIP benefits for loss of household services, the basic policy referred to there applies equally to disability benefits.

■ In providing limited compensation for "any loss of gross income and the loss of earning capacity per person from inability to work," we conclude that the Legislature did not intend to provide compensation for "loss of earning capacity" unless a claimant has suffered a direct and specific monetary loss. Although the term "loss of earning capacity" may well have a broader meaning than "loss of gross income" with respect to damages recoverable in a tort action for personal injuries, we believe that in the context of PIP benefits, the Legislature intended that "earning capacity," insofar as it means something more than loss of "gross income," means income that a claimant, if unemployed, was reasonably certain to receive. Thus, if a claimant is unemployed at the time of the accident, that claimant may have a right to disability benefits for a job that he or she would have commenced after the accident, had the accident not occurred. To qualify for such benefits, a claimant would have to show that a job was available for which the claimant was qualified and that the claimant would have taken that job.

■ In the instant case, plaintiff was not working at the time of the accident, nor did the evidence indicate a reasonable probability that she would have commenced working after the accident.

In short, plaintiff's contention that section 31A–22–307(1)(b)(i) permits a claimant to collect benefits merely by showing a loss of earning capacity and nothing more is not consistent with either the statutory language or the policy of the Act.

Affirmed.

HALL, C.J., HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.