2002 UT 68

**Garrett PRINCE, Plaintiff and Appellant,**

v.

**BEAR RIVER MUTUAL INSURANCE CO., Defendant and Appellee.**

No. 20010298.

Supreme Court of Utah.

July 23, 2002.

Rehearing Denied Aug. 30, 2002.

Trent J. Waddoups, Salt Lake City, for plaintiff.

Joseph J. Joyce, Kristin A. Van Orman, Salt Lake City, for defendant.

RUSSON, Justice:

¶ 1 Garrett Prince ("Prince") appeals an order granting partial summary judgment to Bear River Mutual Insurance Company ("Bear River") and asks us to hold that Bear River breached the insurance policy that afforded Prince personal injury protection ("PIP") coverage. Further, Prince appeals the trial court's award of $450 in attorney fees. We affirm.

## BACKGROUND

¶ 2 The matters on appeal arose out of Prince's allegations that Bear River improperly refused to pay PIP benefits under an insurance policy to Prince for injuries Prince suffered in an automobile accident. At all times relevant to this appeal, Bear River insured Prince for PIP coverage with a policy limit of $3,000, and Prince was current in paying the insurance premiums required by the policy.

¶ 3 On November 8, 1995, Prince was injured in an automobile accident. In connection with his injuries, Prince claims he incurred more than $3,000 in medical expenses. On May 12, 1997, at Bear River's request, Prince underwent a medical examination to investigate the necessity of Prince's medical expenses. Bear River retained Dr. Stephen Marble to conduct the examination.

¶ 4 After the examination, Dr. Marble prepared a report summarizing his findings in which he explained:

By the time Mr. Prince presented to Dr. Howard for chiropractic care, he would have been considered presenting with a complicated spine injury, owing to the delay in treatment initiation. As such, a maximum of 12 weeks of chiropractic care could have been justified. I do not think that the chiropractic care exceeding 12 weeks was *medically necessary*. No further chiropractic care should continue. The chiropractic care has been palliative rather than curative. The patient was only getting up to two days of pain relief with these treatments, but there has been no long-term benefit. Following such a whiplash injury, a multi-disciplinary consultation should have been obtained within 12 weeks from treatment initiation, rather than waiting six months, as was the case here.

(Emphasis added and omitted.) Pursuant to Dr. Marble's report, Bear River concluded that Prince was not entitled to PIP benefits to cover chiropractic care beyond the original twelve weeks of treatment because such care was unnecessary and therefore was excluded from coverage. As a result, Bear River discontinued PIP payments to Prince. Before Bear River received Dr. Marble's report, Bear River had paid $1,924.34 in PIP benefits to Prince.

¶ 5 To obtain additional PIP benefits up to the policy limit to which Prince believed he was entitled, Prince brought suit against Bear River on August 11, 1997, alleging breach of contract, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, fraud, and the tort of violation of public policy embodied in the No-fault Automobile Insurance Act, Utah Code Ann. §§ 31A–22–306 to –309 (2001) (the "Act"). After answering Prince's complaint, Bear River moved for partial summary judgment on all of Prince's claims except for the breach of contract claim. On April 1, 1998, the trial court granted summary judgment on these claims, leaving only Prince's breach of contract claim.

¶ 6 On April 16, 1998, Bear River paid the balance of Prince's PIP claims up to the $3,000 policy limit although Bear River's liability remained in dispute. Then, on March 10, 2000, Bear River tendered a draft to Prince for statutory interest on Prince's PIP claims as set forth in section 31A–22–309(5)(c) of the Utah Code. Prince rejected the draft's tender and returned it to Bear River.

¶ 7 On February 16, 2000, Bear River again moved for summary judgment, this time on Prince's breach of contract claim. Bear River contended summary judgment should be granted because Bear River had paid the PIP insurance policy limit in full. The trial court denied the motion. Then, on October 2, 2000, the trial court entered a minute entry decision, awarding Prince interest that had accrued on $1,100 from August

7, 1997, to April 6, 1998, but declined to award attorney fees.

¶ 8 Subsequently, on November 8, 2000, Prince moved to amend his complaint to, among other things, convert the lawsuit into a class action. Prince also asked the trial court to reconsider its denial of attorney fees. In response, Bear River moved for rule 11 sanctions. On January 12, 2001, the trial court denied Prince's motion to amend the complaint and requested that Prince file an affidavit concerning the claimed attorney fees.

¶ 9 Complying with the request, Prince filed an affidavit regarding attorney fees on January 28, 2001. On February 27, 2001, the trial court entered a final order of dismissal awarding Prince a total of $882.15. The award included interest, costs, and $450 in attorney fees, equivalent to three hours billed for preparing the complaint.

¶ 10 Prince appeals, raising numerous issues.[1] First, Prince contends that Bear River improperly denied Prince PIP benefits under the Act when Bear River concluded that Prince's continued chiropractic treatment was unnecessary. Specifically, Prince contends that Bear River violated the Act because Bear River refused to pay PIP benefits when such benefits were due and that the term "necessary" in the Act and the policy is not a term that limits the policy's coverage. Bear River counters that the term "reasonable and necessary" is a recognized standard used in the insurance industry to determine when PIP benefits must be paid and that Bear River was not required to pay Prince additional PIP benefits because they were not covered by the policy.

¶ 11 Prince also contends that the trial court erred in granting Bear River summary judgment on Prince's breach of the covenant of good faith and fair dealing claim because Bear River failed to plead as an affirmative defense that Prince's claim for PIP benefits was fairly debatable and because denial of PIP benefits in reliance on only the opinion of Bear River's own doctor contravenes the covenant. In response, Bear River contends that summary judgment was appropriate because Prince's PIP benefits claim was fairly debatable and Bear River was not required to plead its fairly debatable defense as an affirmative defense.

¶ 12 Additionally, Prince contends that the trial court erred in granting Bear River summary judgment on its fraud and intentional infliction of emotional distress claims because Bear River did not properly support its summary judgment motion. Bear River counters that Prince did not make out all the elements of these claims and that therefore judgment as a matter of law was appropriate.

¶ 13 Finally, Prince asserts that the trial court abused its discretion by refusing to permit Prince to amend his complaint and by refusing to award him more than $450 in attorney fees. In response, Bear River contends, among other things, that the trial court properly denied Prince's motion to amend because Prince sought to revive with the amended complaint causes of action that the trial court had already dismissed and because Prince's motion to amend was untimely. Bear River also argues that the trial court did not abuse its discretion in not awarding additional attorney fees.

## STANDARD OF REVIEW

¶ 14 Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c); *see also Ault v. Holden*, 2002 UT 33, ¶ 15, 44 P.3d 781. We review the trial court's order granting Bear River summary judgment for correctness and accord no deference to the trial court's legal conclusions. *Holmes Dev., LLC v. Cook*, 2002 UT 38, ¶ 21, 48 P.3d 895; *Regal Ins. Co. v. Bott*, 2001 UT 71, ¶ 6, 31 P.3d 524. In making this determination, " 'we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.' " *Ault*, 2002 UT 33 at ¶ 15, 44 P.3d 781 (quoting *DCM Inv. Corp. v.*

---

1. Prince casts this appeal as having at least eleven distinct issues. We set forth here only the issues that are relevant to our opinion, which address all of Prince's causes of action pleaded in the complaint.

*Pinecrest Inv. Co.,* 2001 UT 91, ¶ 6, 34 P.3d 785).

## ANALYSIS

### I. PIP INSURANCE

*A. No–Fault Automobile Insurance Act*

¶ 15 Before we address the questions at issue, we find it necessary to expound the statutory background serving as the basis for Prince's causes of action. Utah's No-fault Automobile Insurance Act has two primary components: (1) no-fault PIP insurance coverage, and (2) partial tort immunity from certain PIP-type claims for tortfeasors that maintain no-fault insurance on their own vehicles. *Bear River Mut. Ins. Co. v. Wall,* 1999 UT 33, ¶ 10, 978 P.2d 460.

¶ 16 First, the Act requires that insurers provide no-fault PIP coverage to their insureds under any policy "purchased to satisfy the owner's or operator's security requirement" of the Utah Code. Utah Code Ann. § 31A–22–302(2) (2001). This component of the Act "allows accident victims to claim PIP benefits from their own insurers—regardless of fault—up to statutory limits." *Bear River Ins. Co.,* 1999 UT 33 at ¶ 10, 978 P.2d 460; *see also Allstate Ins. Co. v. Ivie,* 606 P.2d 1197, 1200 (Utah 1980). The PIP benefits under the Act include the payment of the reasonable value, up to the statutory limit of $3,000, of necessary medical and related expenses incurred as a result of personal injury sustained in an automobile accident. Utah Code Ann. § 31A–22–307(1)(a) (2001). PIP benefits are to "be [paid] on a monthly basis as expenses are incurred," *id.* § 31A–22–309(5)(a), "so that claimants can continue to meet basic living expenses," *Versluis v. Guar. Nat'l Cos.,* 842 P.2d 865, 867 (Utah 1992). Such benefits are overdue on any valid claim for PIP benefits if not paid within thirty days of the insurer's receipt of reasonable proof of the "fact and amount of ex-

penses incurred." Utah Code Ann. § 31A–22–309(5)(b) (2001).

¶ 17 In general, the purpose of PIP coverage under the Act "is to ensure that insurance companies provide immediate minimal benefits for covered individuals [injured] in automobile accidents in order to equitably and effectively handle the greater bulk of personal injury claims arising out of automobile accidents." *Regal Ins. Co. v. Bott,* 2001 UT 71, ¶ 11, 31 P.3d 524; *see also Versluis,* 842 P.2d at 867. Regardless of fault, PIP benefits under the Act are intended to expeditiously cover out-of-pocket expenses incurred for necessary medical treatment that do not exceed $3,000, obviating the need to sue the purported tortfeasor to recover the same. *Regal Ins. Co.,* 2001 UT 71 at ¶ 11; 31 P.3d 524; *Versluis,* 842 P.2d at 867. In other words, the intent of PIP benefits is to preclude vexatious lawsuits against tortfeasors to recover relatively minor damages and to protect the injured party from "bearing the expense of lengthy delay associated with litigation to establish [the] fault" of the alleged tortfeasor. *Warren v. Melville,* 937 P.2d 556, 558–59 (Utah Ct.App.1997).

¶ 18 Further, "PIP benefits were not intended 'to provide an automatic reward or a "windfall" for being involved in an accident by requiring payment when there was no loss actually suffered....'" *Versluis,* 842 P.2d at 867 (quoting *Jamison v. Utah Home Fire Ins. Co.,* 559 P.2d 958, 960 (Utah 1977)). A PIP insurer can deny coverage if no loss was actually suffered or if the expenses incurred were outside the scope of coverage as set forth in Utah Code section 31A–22–207(1) and the PIP insurance policy. Accordingly, if a dispute arises between the PIP insurer and its insured regarding coverage or if an insured is entitled to benefits but has not been timely paid, the insured can bring a first-party insurance contract claim[2] against

---

2. Prince contends that his claim is a third-party situation in which Bear River owes him fiduciary duties. However, we recently held in *Tucker v. State Farm Mutual Automobile Insurance Co.* that a plaintiff's claim against his insurer to recover unpaid or overdue PIP benefits that the insurer was obligated to pay under the PIP provisions of an insurance policy is a first-party insurance

claim. 2002 UT 54, ¶¶ 12–14, 53 P.3d 947; *see also* Utah Code Ann. § 31A–1–301(46) (2001); *Lieber v. ITT Hartford Ins. Ctr., Inc.,* 2000 UT 90, ¶ 18, 15 P.3d 1030; *C.T. ex rel. Taylor v. Johnson,* 1999 UT 35, n. 3, 977 P.2d 479; *Billings v. Union Bankers Ins. Co.,* 918 P.2d 461, 465 (Utah 1996); *Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 798 n. 2 (Utah 1985). Because Prince is suing to

its insurer to recover sums the insurer agreed to pay for the insured's losses under the insurance contract, plus statutory interest and attorney fees. Utah Code Ann. § 31A–22–309(5)(d). Because a first-party insurance claim is purely contractual, an insurer owes no fiduciary duties to its insured when it denies PIP benefits as it does under a third-party insurance claim. *See Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 465 (Utah 1996); *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 800 (Utah 1985).

¶ 19 Second, the Act provides for partial, limited tort immunity for tortfeasors who maintain no-fault insurance on their vehicles. *Bear River Ins. Co.*,1999 UT 33 at ¶ 10, 978 P.2d 460. However, this court has explained that "this immunity is partial: tort victims may still bring claims against tortfeasors for pain and suffering, as well as for economic losses, in excess of the statutory PIP limit." *Id.* (citations omitted); *see also Allstate Ins. Co.*, 606 P.2d at 1200 (stating that if insured's injuries are more than $3,000, then insured "may maintain a claim for *general damages* "). In addition to bringing a suit to recover if medical expenses exceed $3,000, an injured person or his estate can also bring suit against the tortfeasor in the event of death, dismemberment, permanent disability, or permanent disfigurement. Utah Code Ann. § 31A–22–309(1)(a) (2001).

### B.   Necessity of Medical Expenses

¶ 20 Bear River denied Prince's claims for additional PIP benefits because Bear River concluded that Prince's continued chiropractic care was unnecessary, relying on Dr. Marble's opinion that Prince's care was unnecessary beyond the first twelve weeks. Prince contends that Bear River improperly denied Prince PIP benefits under the Act, asserting the term "necessary" in the Act and the policy is not a coverage term that limits the risk transferred by the policy. To determine whether Bear River can deny coverage because the expenses were unnecessary, we first look to the Act and the underlying insurance policy.

When we interpret statutes, unless a statute is ambiguous, we look exclusively to a statute's plain language to ascertain the statute's meaning. *Blackner v. State*, 2002 UT 44, ¶ 12, 48 P.3d 949. Similarly, because an insurance policy is the contract between the insurer and the insured, we first look to the plain language of the policy to ascertain its meaning if it is not ambiguous. *Holmes Dev., LLC v. Cook*, 2002 UT 38, ¶ 24, 48 P.3d 895; *Miller v. USAA Cas. Ins. Co.*, 2002 UT 6, ¶ 49, 44 P.3d 663. Neither the language of the relevant provision of the Act nor the relevant portion of the policy is ambiguous.

¶ 22 According to the Act:
Personal injury protection coverages and benefits include:

(a) the reasonable value of all expenses for *necessary* medical, surgical, X-ray, ... hospital, and nursing services, not to exceed a total of $3,000 per person[.]

Utah Code Ann. § 31A–22–307(1)(a) (2001) (emphasis added).

¶ 23 Likewise, the policy itself provides: "[Bear River] will pay personal injury protection benefits that are reasonable and *necessary* to or on behalf of each eligible injured person for: (a) medical expenses...." (Emphasis added.)   Further, the policy provides:

If [Prince] incurs medical expenses which are unreasonable or *unnecessary,* we may refuse to pay for those medical expenses and contest them.... *[U]nnecessary medical expenses* are fees for medical services which are not usually and customarily performed for the treatment of the injury, including fees for an excessive number, amount, or duration of medical services.

(Emphasis added.)

¶ 24 Under both the plain language of the relevant statute and the relevant policy provisions, Bear River was required to pay PIP benefits to cover only expenses incurred for necessary medical treatments. *See Nasser v. Auto Club Ins. Ass'n*, 435 Mich. 33, 457 N.W.2d 637, 645 (1990) ("Under [Michigan's no-fault] statutory scheme, an insurer is not *liable* for any medical expense

recover allegedly unpaid PIP benefits from Bear      River, his claim is a first-party insurance claim.

to the extent that . . . the product or service itself is not reasonably necessary."); *Elkins v. New Jersey Mfrs. Ins. Co.,* 244 N.J.Super. 695, 583 A.2d 409, 412 (1990) [3] (holding that for medical expenses occasioned by vehicle accident to be compensable under New Jersey statute expenses had to be "reasonable and necessary"). If Prince incurred unnecessary medical expenses, then Bear River was not required to pay PIP benefits to cover those expenses.

## II. BREACH OF CONTRACT

¶ 25 On appeal, Prince asks us to hold that Bear River breached the insurance policy by refusing to pay PIP benefits up to the policy limit when due. According to the Utah Code and the relevant insurance policy, Bear River was required to pay for "the reasonable value of all expenses for necessary medical, surgical, X-ray, . . . ambulance, hospital, and nursing services" incurred as a result of the accident that do not "exceed a total of $3,000," Utah Code Ann. § 31A–22–307(1)(a) (2001), "within 30 days after the insurer receives reasonable proof of the fact and amount of expenses incurred," *id.* § 31A–22–309(5)(b). Prince averred that he incurred more than $3,000 in medical expenses allegedly occasioned by the automobile accident, but Bear River paid only $1,924.34 and denied Prince further PIP benefits because Bear River concluded that further benefits were unnecessary. In response, Prince initiated this breach of contract action.

¶ 26 Pursuant to statute, Prince was entitled to seek as contract damages only (1) payment of overdue expenses, (2) "interest at the rate of 1 1/2% per month after the due date," and (3) reasonable attorney fees. *Id.* § 31A–22–309(5). In the instant case, Bear River paid the allegedly overdue benefits, and the trial court awarded Prince statutory interest and attorney fees, rendering Prince's appeal of the breach of contract action moot.[4] *Jensen v. Eddy,* 30 Utah 2d 154, 156, 514 P.2d 1142, 1143 (1973); *see also Bennion v. Pennzoil Co.,* 826 P.2d 137, 138 (Utah 1992).

## III. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

¶ 27 The next issue on appeal is whether the trial court properly granted Bear River summary judgment on Prince's breach of the covenant of good faith and fair dealing claim. Under Utah law, "an implied covenant of good faith and fair dealing generally inheres [in] all contractual relationships." *Rawson v. Conover,* 2001 UT 24, ¶ 44, 20 P.3d 876. Under this covenant, the contracting parties each impliedly promise not to "intentionally or purposely do anything [that] will destroy or injure the other party's right to receive the fruits of the contract," *Brown v. Moore,* 973 P.2d 950, 954 (Utah 1998) (quotations omitted), and "to comply [with the covenant], a party must act consistently 'with the agreed common purpose and the justified expectations of the other party,'" *Rawson,* 2001 UT 24 at ¶ 44, 20 P.3d 876 (quoting *St. Benedict's Dev. Co. v. St. Benedict's Hosp.,* 811 P.2d 194, 200 (Utah 1991)). In the first-party insurance context, this

> "implied covenant of good faith performance contemplates, at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim."

*Gibbs M. Smith, Inc. v. United States Fid. & Guar. Co.,* 949 P.2d 337, 344 (Utah 1997) (quoting *Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 801 (Utah 1985)); *see also Lieber v. ITT Hartford Ins. Ctr., Inc.,* 2000 UT 90, ¶ 19, 15 P.3d 1030. If an insurer acts reasonably in denying a claim, then the insurer did not contravene the covenant. 14 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* 3d § 207:53 (1999).

¶ 28 The denial of a claim is reasonable if the insured's claim is fairly debatable. Under Utah law, if an insurer denies an " 'insured's claim [that] is fairly debatable,

---

3. The New Jersey statute at issue in *Elkins v. New Jersey Manufacturers Insurance Co.* is comparable to Utah's statutes.

4. Although Prince asserts that the trial court did not award sufficient attorney fees, we address Prince's attorney fees argument as a separate issue below.

[then] the insurer is entitled to debate it and cannot be held to have breached the implied covenant if it chooses to do so.'" *Morris v. Health Net of Calif., Inc.,* 1999 UT 95, ¶ 7, 988 P.2d 940 (quoting *Billings v. Union Bankers Ins. Co.,* 918 P.2d 461, 465 (Utah 1996)); *see also Callioux v. Progressive Ins. Co.,* 745 P.2d 838, 842 (Utah Ct.App.1987); 14 Russ & Segalla, *Couch on Insurance* 3d § 204:28.

¶ 29 In the instant case, the trial court concluded that Prince's claim was fairly debatable and that, therefore, Prince's breach of the covenant of good faith and fair dealing claim failed as a matter of law. Prince appeals, arguing that (1) Bear River failed to plead its fairly debatable defense as an affirmative defense, and (2) nonpayment or delayed payment of PIP benefits in reliance on only Dr. Marble's opinion violated Bear River's covenant of good faith and fair dealing because denial in reliance on only the doctor's opinion is "insufficient to satisfy the 'fairly debatable' defense."

### A. Affirmative Defense

▮ ¶ 30 Prince first contends that Bear River waived its "fairly debatable" defense when Bear River failed to affirmatively plead the defense according to rüle 8(c) of the Utah Rules of Civil Procedure. Rule 8(c) provides:

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and *any other matter constituting an avoidance or affirmative defense.*

Utah R. Civ. P. 8(c) (emphasis added). Unless a matter must be affirmatively pleaded as a defense under rule 8(c), a defendant can merely deny the plaintiff's averments under rule 8(b). *Jones, Waldo, Holbrook & McDonough v. Dawson,* 923 P.2d 1366, 1374 (Utah 1996). The purpose of requiring a party to plead affirmative defenses under rule 8(c) is to ensure that parties "have ade-quate notice of the issues and facts in the case." *Price–Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.,* 713 P.2d 55, 59 (Utah 1986).

▮ ¶ 31 A fairly debatable defense to an insured's first-party bad faith claim against its insurer is not specifically enumerated in the rule as an affirmative defense that must be affirmatively pleaded. Utah R. Civ. P. 8(c). Thus, we must determine whether an insurer's defense to a bad faith claim that an insured's claim is "fairly debatable" is "any other matter constituting an avoidance or affirmative defense." *Id.* Rule 8(c) does not define or explain what constitutes an avoidance or an affirmative defense. *Jones, Waldo, Holbrook & McDonough,* 923 P.2d at 1373. Nevertheless, a rule 8(c) affirmative defense is a defense employed to defeat the plaintiff's claim by raising matters outside or extrinsic to the plaintiff's prima facie case. *Id.* at 1374; *see also Creekview Apts. v. State Farm Ins. Co.,* 771 P.2d 693, 695 (Utah Ct.App.1989) (explaining that avoidance under rule 8(c) is "a defense independent of the allegations in the pleadings"). In other words, if a defense directly assails or "merely controverts [a] plaintiff's prima facie case," it is not an affirmative defense and can be simply denied under rule 8(b). *Jones, Waldo, Holbrook & McDonough,* 923 P.2d at 1374.

¶ 32 In its answer, Bear River denied all the allegations giving rise to Prince's bad faith claim and added that Bear River "affirmatively states that it has acted in good faith and has dealt fairly with [Prince]." Bear River's assertion that Prince's claim was fairly debatable controverts Prince's averment that Bear River denied Prince's claim without "a reasonable basis for doing so." Thus, Bear River's fairly debatable defense served only to directly refute Prince's allegations in the complaint that Bear River denied Prince PIP benefits in bad faith, and thus, controverted Prince's prima facie case. The fairly debatable defense did not extrinsically attack Prince's claims as would an affirmative defense or avoidance such as a statute of limitations defense or a contractual limitations defense, *see Creekview Apts.,* 771 P.2d at 695, which defeat a plaintiff's claim but do so

without directly assailing the elements of the prima facie case, *see Jones, Waldo, Holbrook & McDonough*, 923 P.2d at 1374. Further, Bear River's denial in the answer sufficiently afforded Prince " 'notice of the [fairly debatable defense] raised and [afforded him] an opportunity to meet [it],' " which is all that is required under rule 8. *Id.* at 1374 (quoting *Cheney v. Rucker*, 14 Utah 2d 205, 211, 381 P.2d 86, 91 (1963)). Therefore, Bear River's fairly debatable defense was not an avoidance or an affirmative defense, and Bear River was not required to affirmatively plead such as a defense in its answer.

### B. Fairly Debatable

¶ 33 Prince next contends that the fairly debatable standard did not apply in this case because reliance on only Dr. Marble's opinion was an insufficient basis upon which Bear River could deny Prince's PIP benefits claim. The trial court's conclusion that Prince's PIP benefits claim was fairly debatable under the facts of this case is a question of law that we review for correctness. *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 464 (Utah 1996). Nevertheless, trial courts have "some discretion" in concluding that an insurance claim is fairly debatable "because of the complexity and variety of the facts upon which the fairly debatable determination depends," and we will therefore "grant the trial court's conclusion some deference." *Id.*

¶ 34 We concur with the court of appeals that "[i]f the evidence presented creates a factual issue as to the claim's validity, there exists a debatable reason for denial, ... eliminating the bad faith claim." *Callioux v. Progressive Ins. Co.*, 745 P.2d 838, 842 (Utah Ct.App.1987); *see also* 14 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* 3d § 204:28 (1999) ("A 'debatable reason,' for purposes of determining whether a first-party insurer may be subjected to bad-faith liability, means an arguable reason, a reason that is open to dispute or question.").

¶ 35 In this case, there was a legitimate factual issue as to the validity of Prince's claim for PIP benefits after the first twelve weeks of chiropractic care. Denying benefits under an insurance policy in reliance on an expert's report, such as a doctor's report, even if the expert's opinion is provided in exchange for remuneration, is not a bad faith denial because the expert's report creates a legitimate factual question regarding the validity of an insured's claim for benefits, making the insured's claim at least fairly debatable. *Callioux*, 745 P.2d at 842. Bear River, under the Act and the policy, was entitled to deny Prince benefits if Prince's medical care was not necessary. *See supra* part I.B. Bear River denied Prince PIP benefits in reliance on the opinion of Dr. Marble, its medical examiner, that more than twelve weeks of chiropractic care was not "medically necessary." As such, the validity of Prince's claim was fairly debatable because Bear River denied continued benefits in reliance on the doctor's opinion.

¶ 36 Because the validity of Prince's PIP benefits claim was fairly debatable, Bear River's denial of benefits did not breach the covenant of good faith and fair dealing as a matter of law. Therefore, the trial court correctly granted Bear River summary judgment on this claim.

## IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

¶ 37 The next issue on appeal is whether the trial court correctly granted Bear River summary judgment on Prince's intentional infliction of emotional distress claim. Prince contends that because Bear River did not properly support its summary judgment motion, the trial court erred in granting Bear River summary judgment on this claim. Under Utah law, a plaintiff must prove four elements to establish an intentional infliction of emotional distress claim:

(i) the [defendant's] conduct [complained of] was outrageous and intolerable in that it offended ... generally accepted standards of decency and morality; (ii) [the defendant] intended to cause, or acted in reckless disregard of the likelihood of causing, emotional distress; (iii) [the plaintiff] suffered severe emotional distress; and (iv) [the defendant's] conduct proximately caused [the] emotional distress.

*Retherford v. AT & T Communications of the Mountain States, Inc.,* 844 P.2d 949, 970–71 (Utah 1992).

¶ 38 If the trial court determines that a defendant's conduct was not outrageous as a matter of law, then the plaintiff's claim fails, *see Franco v. Church of Jesus Christ of Latter-day Saints,* 2001 UT 25, ¶¶ 28–29, 21 P.3d 198, and a court may properly grant the defendant summary judgment on an intentional infliction of emotional distress claim, *see Schuurman v. Shingleton,* 2001 UT 52, ¶¶ 24–25, 26 P.3d 227. A court is to determine whether a " 'defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.' " *Id.* at ¶ 23 (quoting *Gygi v. Storch,* 28 Utah 2d 399, 401, 503 P.2d 449, 450 (Utah 1972) (quotation omitted)). Outrageous conduct, for purposes of the tort of intentional infliction of emotional distress, is conduct that evokes " 'outrage or revulsion; it must be more than unreasonable, unkind, or unfair.' " *Franco,* 2001 UT 25 at ¶ 28, 21 P.3d 198 (quoting 86 C.J.S. *Torts* § 70 (1997)). Additionally, conduct is not outrageous simply because it is " 'tortious, injurious, or malicious, or because it would give rise to punitive damages, or because it is illegal.' " *Id.*

¶ 39 Prince alleged in his complaint that the outrageous and intolerable conduct that proximately caused him emotional distress was Bear River's denial of his claim for PIP benefits and its reliance on Dr. Marble's report in doing so. We have recognized that an insured can sue an insurer for intentional infliction of emotional distress for refusing to pay benefits under the contract in appropriate cases. *Broadwater v. Old Republic Sur.,* 854 P.2d 527, 536 (Utah 1993); *Culp Constr. Co. v. Buildmart Mall,* 795 P.2d 650, 654–55 (Utah 1990). As a matter of law, however, if Bear River's reason for denying benefits under the policy is fairly debatable, then Bear River's denial does not rise to the level of outrageous conduct that could give rise to liability for intentional infliction of emotional distress. *See Reedy v. White Consol. Indus., Inc.,* 890 F.Supp. 1417, 1443 (N.D.Iowa 1995) (holding that if insurer's obligation to pay benefits is fairly debatable, then "refusing to pay the benefits cannot be outrageous within the meaning of the tort of intentional infliction of emotional distress").

¶ 40 In this case, sufficient evidence was presented to the trial court on summary judgment for the trial court to conclude that Bear River's denial of PIP benefits to Prince in reliance on Dr. Marble's report was fairly debatable. As stated above, if an insurance company solicits the opinion of a doctor and relies on the doctor's opinion in denying an insured's claim, then the claim is at least fairly debatable. *See supra* ¶ 35. Bear River denied Prince PIP benefits in reliance on Dr. Marble's report, which accompanied Bear River's summary judgment motion. In the report, Dr. Marble opined that Prince's continued chiropractic treatment was unnecessary. Regardless of whether the insurer properly denied the claim as a matter of law, denial under such circumstances should not evoke outrage or revulsion, nor does it offend generally accepted standards of decency or morality. Accordingly, Bear River's denial of Prince's PIP benefits in reliance on Dr. Marble's report was not "outrageous and intolerable" as a matter of law because it was fairly debatable and reasonable. Therefore, the trial court properly granted Bear River summary judgment on the intentional infliction of emotional distress claim.

## V. FRAUD

¶ 41 We next address whether the trial court correctly granted Bear River summary judgment on Prince's fraud claim. To successfully establish a fraud claim, the party asserting fraud must show by clear and convincing evidence

"(1) [t]hat a representation was made; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage."

*Franco v. Church of Jesus Christ of Latter-day Saints,* 2001 UT 25, ¶ 33, 21 P.3d 198 (emphasis omitted) (quoting *Mikkelson v. Quail Valley Realty,* 641 P.2d 124, 126 (Utah 1982)· (quotations omitted)). Accordingly, essential to making out a fraud claim is "that the defendant either *knew* the representation [it made was] false or [that the defendant] made the representation recklessly, *knowing* that [it] had insufficient knowledge upon which to base [the] representation." *Id.* at ¶ 36.

▪ ¶ 42 Prince alleged in the complaint that Bear River knew Prince was entitled to the statutory limit of $3,000 in PIP benefits or, in the alternative, that Bear River refused to pay Prince the benefits knowing that Bear River lacked sufficient knowledge upon which to base such a representation. However, the evidence before the trial court on summary judgment established that (1) Bear River did not know Prince was legally entitled to the benefits up to the statutory limit and (2) Bear River did not know it had insufficient knowledge upon which to make a representation that Prince's continued chiropractic care was unnecessary and that Prince was therefore not legally entitled to continued PIP benefits.

¶ 43 First, Bear River did not know that Prince was legally entitled to continued PIP benefits when it denied Prince's claim for benefits as a matter of law. Section 31A–22–307(1) of the Utah Code and the PIP insurance policy provided that Prince was entitled to PIP benefits only if the benefits covered *necessary* medical care. *See supra* part I.B. Dr. Marble opined that continued chiropractic care after the first twelve weeks was unnecessary. Bear River considered and relied upon Dr. Marble's opinion that continued care was unnecessary when it denied Prince's claim. Thus, Bear River reasonably believed that Prince was not entitled to the benefits, and therefore Bear River clearly did not know that Prince was entitled to continued PIP benefits.[5]

▪ ¶ 44 Second, Bear River did not know that it lacked sufficient knowledge upon which it could make a representation as to Prince's continued chiropractic care. "To have made a false representation recklessly, defendants *would have to know* that they had insufficient knowledge upon which to base the representation made." *Rawson v. Conover,* 2001 UT 24, ¶ 28, 20 P.3d 876 (emphasis added). If an insured's claim is fairly debatable, an insurer has sufficient information to reasonably conclude that it can deny the claim. To be fairly debatable, evidence must establish that there is an arguable or debatable basis underlying the insurer's nonpayment or delayed payment of a claim. *See Callioux v. Progressive Ins. Co.,* 745 P.2d 838, 842 (Utah Ct.App.1987). It follows, then, that a debatable reason arises only in a situation where the insurer *reasonably* believes it is denying a claim based upon *sufficient knowledge* to deny the claim, and therefore, as a matter of law, the insurer cannot know it lacks sufficient knowledge upon which to determine that the insured is not entitled to coverage.

¶ 45 In this case, Dr. Marble's report called into question Prince's claim, making Prince's claim fairly debatable. The trial court had before it undisputed evidence that "Bear River relied on the ... report of Dr. Marble to determine whether [Prince's] medical expenses were reasonable and necessary." Prince failed to counter with any evidence that Bear River otherwise *knew* that Dr. Marble's report was an insufficient basis upon which it could rely in denying Prince's PIP benefits claims. Therefore, the undisputed evidence shows that Bear River did not know it lacked sufficient knowledge in representing that Prince was not entitled to PIP benefits. Thus, because the undisputed evidence presented to the trial court on summary judgment established, as a matter of law, that Bear River did not deny Prince PIP benefits either knowing Prince was entitled to such benefits or knowing it lacked sufficient knowledge to make a representation as to whether additional chiropractic visits were necessary and as to Prince's entitlement to the benefits, the trial court correctly granted Bear River summary judgment on Prince's fraud claim.

---

5. We take no position on whether Prince was legally entitled to PIP benefits. We state only that Bear River reasonably believed it could deny them.

## VI. TORT OF VIOLATION OF PUBLIC POLICY EMBODIED IN NO–FAULT INSURANCE ACT

¶ 46 The next issue is whether the trial court correctly granted Bear River summary judgment on Prince's claim that Bear River committed the tort of violation of public policy embodied in the No-fault Insurance Act.[6] Prince's claim for the violation of this tort merely recasts his breach of contract claim, which necessarily includes breach of the No-fault Insurance Act's provisions, and is thus wholly repetitive.

¶ 47 Where a statute provides a specific civil legal remedy to redress an injury in violation of that statute, a tort action for violation of the public policy embodied in the statute will not lie. *McClure v. Am. Family Mut. Ins. Co.*, 223 F.3d 845, 856 (8th Cir. 2000); *Herman v. United Bhd. of Carpenters & Joiners of Am.*, 60 F.3d 1375, 1385 (9th Cir.1995); *Schwartz v. Comcorp, Inc.*, 91 Ohio App.3d 639, 633 N.E.2d 551, 557 (1993) (per curiam). Utah's public policy with respect to no-fault insurance and a remedy for breach of that policy are contained within the plain language of the Act itself, *see supra* part I, and the Act's public policy does not emanate therefrom to fashion novel causes of action. Indeed, the Act provides statutory remedies for its violation, including interest on overdue payments and attorney fees, and the Act does not need to be augmented by common law remedies to vindicate the public policy embodied in the Act. *See* Utah Code Ann. § 31A–22–309(5). Therefore, the trial court correctly granted Bear River summary judgment on this claim.

## VII. MOTION TO AMEND COMPLAINT

¶ 48 Next, we address whether the trial court abused its discretion by denying Prince's motion to amend the complaint. Prince argues that the court should have granted his motion to amend because (1) Dr. Marble is an indispensable party and (2) Prince offered an adequate explanation for his delay in moving to amend. Rule 15(a) of the Utah Rules of Civil Procedure provides that once a responsive pleading has been served, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Utah R. Civ. P. 15(a); *see also Holmes Dev., ·LLC v. Cook*, 2002 UT 38, ¶ 57, 48 P.3d 895. We will affirm a trial court's denial of a motion to amend unless the trial court abused its discretion. *Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.*, 970 P.2d 1273, 1281 (Utah 1998).

¶ 49 It is settled that a trial court does not abuse its discretion when it denies a motion to amend a pleading that was filed after an extensive delay without an adequate justification, after some issues have been resolved, and when that pleading would add new parties and claims, especially when the moving party "knew that all of the parties it sought to add were involved with each other from the outset of the case and therefore ... they could have been joined in a timely manner." *R & R Energies v. Mother Earth Indus., Inc.*, 936 P.2d 1068, 1080 (Utah 1997); *see also Atcitty v. Bd. of Educ. of San Juan County Sch. Dist.*, 967 P.2d 1261, 1264 (Utah Ct.App.1998). In this case, Prince sought to amend his complaint after an excessive delay: more than three years after he filed his original complaint. The amended complaint Prince sought to file attempted to join Dr. Marble as a defendant, alleging that (1) Dr. Marble "aided and abetted" Bear River in making secret profits as a fiduciary by retaining Prince's premiums paid without paying PIP benefits and (2) Dr. Marble intentionally interfered with Prince's economic relations by improper means to legitimize Bear River's breach of contract and attempted to resurrect Prince's claims, which the trial court had already disposed of on summary judgment, by converting his individual claims into class action claims. Permitting Prince to amend at this late date would be prejudicial to Bear River because Bear River would incur attorney fees in addition to those already amassed to address issues the trial court has decided.

¶ 50 Additionally, Prince has not tendered a satisfactory justification for moving to amend three years after filing the original

---

**6.** We have never recognized this tort.

complaint. As near as we can ascertain from Prince's brief, Prince intimates that his delay in moving to amend should be excused because until the present legal environment is changed by a judge willing to interpret the No-fault Insurance Act properly, moving to amend would be futile. Prince's proffered excuse is unclear and unpersuasive. Accordingly, the trial court did not abuse its discretion by denying Prince's motion to amend the complaint. *See Neztsosie v. Meyer*, 883 P.2d 920, 922 (Utah 1994) (concluding that trial court did not abuse its discretion by denying plaintiff's motion for leave to file second amended complaint where plaintiff moved to amend after case had been pending three years and after trial court had entered summary judgment order and plaintiff knew or should have known of claim when previous amended complaint was filed).

## VIII. ATTORNEY FEES

¶ 51 The final issue on appeal is whether the trial court's award of $450 in attorney fees was proper. Prince argues that inasmuch as he was the prevailing party below, the trial court should have awarded him all attorney fees he reasonably incurred in this litigation. Both parties seek attorney fees on appeal.

### A. Attorney Fees Below

¶ 52 Prince contends that because he was the prevailing party on the breach of contract claim, he should be awarded all of his attorney fees that were reasonably incurred in pursuing this litigation. Attorney fees are generally recoverable in Utah only when authorized by statute or contract. *Miller v. USAA Cas. Ins. Co.*, 2002 UT 6, ¶ 69, 44 P.3d 663. The Utah Code provides in pertinent part:

> The person entitled to the benefits may bring an action in contract to recover the expenses plus the applicable interest. If the insurer is required by the action to pay any overdue benefits and interest, *the insurer is also required to pay a reasonable attorney's fee to the claimant.*

Utah Code Ann. § 31A–22–309(5)(d) (2001) (emphasis added). In the instant case, Bear River paid the overdue benefits that Prince alleged he was owed, and in connection therewith, the trial court required Bear River to pay interest in conformity with Utah Code section 31A–22–309(5)(c) and awarded Prince $450 in attorney fees.

¶ 53 Once the trial court decided that Prince was entitled to an attorney fee award under section 31A–22–309(5)(d), the trial court had broad discretion in deciding what constitutes reasonable attorney fees, and we will not reverse that determination absent an abuse of discretion. *Bakowski v. Mountain States Steel, Inc.*, 2002 UT 62, ¶ 33, 52 P.3d 1179.

¶ 54 After hearing argument on the amount of reasonable fees and after considering the parties' contentions, the trial court concluded that $450 was a reasonable attorney fee award. Prince contends that (1) Bear River misled the trial court in countering Prince's arguments for substantial attorney fees by arguing that Prince's counsel had spent only three hours preparing the breach of contract claim for which Prince may recover attorney fees, and (2) Prince should be able to recover all his attorney fees incurred because he prevailed on the primary issue in this case, the breach of contract claim.

¶ 55 First, in exercising its discretion in awarding attorney fees, a trial court considers all the evidence and arguments presented regarding the award and in its discretion determines a reasonable fee. Regardless of whether Prince believes the trial court was misled by Bear River, accepting one party's argument over the other is not an abuse of discretion in the absence of substantial proof that the trial court abused its discretion. Even if Prince believes that $450 is insufficient, the amount itself does not prove that the trial court abused its discretion. *Id.* at ¶ 38 (stating that "a trial court is not required to adopt the prevailing party's assertion of what constitutes a reasonable attorney fee").

¶ 56 Second, Prince is not entitled to all the attorney fees he incurred pursuing this suit because he prevailed only on the contract claim. Because Prince can recover attorney fees only if authorized by

section 31A–22–309(5)(d), Prince can recover attorney fees only if incurred pursuing the contract action to recover "any overdue benefits and interest." Utah Code Ann. § 31A–22–309(5)(d) (2001). The trial court can award attorney fees to Prince on the other issues before the court only if Prince is the prevailing party on those issues. *Ault v. Holden*, 2002 UT 33, ¶¶ 47–48, 44 P.3d 781; *see also* Utah Code Ann. § 78–27–56(1) (1996). In other words, the trial court can award Prince attorney fees only for those issues on which he was the prevailing party. Indeed, we have explained that

> a party seeking fees must allocate its fee request according to its underlying claims. Indeed, the party must categorize the time and fees expended for "(1) successful claims for which there may be an entitlement to attorney fees, (2) unsuccessful claims for which there would have been an entitlement to attorney fees had the claims been successful, and (3) claims for which there is no entitlement to attorney fees."

*Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998) (citation omitted) (quoting *Cottonwood Mall Co. v. Sine*, 830 P.2d 266, 268 (Utah 1992)). In addition, "[w]hile a trial court may, in its discretion, deny fees altogether for failure to allocate, it may not award wholesale all attorney fees requested if they have not been allocated as to separate claims and/or parties." *Valcarce v. Fitzgerald*, 961 P.2d 305, 318 (Utah 1998). In the instant case, Prince was not the prevailing party with respect to whether the statute required that Bear River pay only necessary claims. *See supra* part I.B. Prince was the prevailing party on the contract claim only to the extent that Bear River voluntarily paid Prince's claim, and in connection therewith the trial court awarded Prince interest and attorney fees as mandated by statute.

¶ 57 Further, Prince was not the prevailing party on any other claims. Although under Utah law a plaintiff can recover attorney fees if the plaintiff is successful in pursuing a first-party bad faith suit against its insurer, *see Lieber v. ITT Hartford Ins. Ctr., Inc.*, 2000 UT 90, ¶ 16, 15 P.3d 1030, Prince's first-party bad faith claim failed because it was fairly debatable. In addition, the trial court

properly granted summary judgment on Prince's intentional infliction of emotional distress, fraud, and violation of public policy claims. *See supra* parts IV–VI. Accordingly, Prince was not entitled to any attorney fees with respect to those claims. Therefore, the trial court did not abuse its discretion in awarding $450 in attorney fees.

### B. Attorney Fees on Appeal

¶ 58 Both parties seek attorney fees on appeal. Prince contends that he is entitled to attorney fees on appeal because "[a]ppellate courts routinely allow attorney fees on appeal when contracts and/or statutes expressly provide for fees." Although Utah Code section 31A–22–309(5)(d) provides for an award of attorney fees to the prevailing party, Prince is not the prevailing party on appeal and is therefore not entitled to attorney fees under the statute.

¶ 59 Likewise, Bear River contends that it is entitled to attorney fees because it had to defend a frivolous appeal. Although Bear River presented reasons why we should grant it attorney fees on appeal, it did not cite any authority to support its position, contrary to Utah Rule of Appellate Procedure 24. On myriad occasions, we have held that we will not address issues inadequately briefed. *Associated Gen. Contractors v. Bd. of Oil, Gas & Mining*, 2001 UT 112, ¶ 37 & n. 8, 38 P.3d 291; *State v. Lusk*, 2001 UT 102, ¶ 36, 37 P.3d 1103. Nevertheless, even if we assume that Bear River seeks attorney fees under rule 33 of the Utah Rules of Appellate Procedure, its contention fails. Under rule 33, a frivolous appeal is one that "is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." Utah R.App. P. 33(b); *see also Gildea v. Guardian Title Co.*, 970 P.2d 1265, 1272 (Utah 1998). Although we have concluded that all of Prince's claims except for the breach of contract claim, which was paid before it was resolved, fail as a matter of law, Prince's appeal of the trial court's conclusions with respect to those claims is not frivolous. Therefore, neither party is entitled to attorney fees on appeal.

## CONCLUSION

¶ 60 In light of the foregoing, the trial court properly granted partial summary judgment in favor of Bear River on Prince's breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, fraud, and violation of public policy embodied in the No-fault Insurance Act claims. Further, Prince's arguments with respect to the breach of contract claim are moot because Prince has already been awarded all damages recoverable. Moreover, the trial court did not abuse its discretion in denying Prince's motion to amend the complaint. Finally, the trial court was within its discretion in awarding Prince $450 in attorney fees. Accordingly, we affirm.

¶ 61 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice HOWE, and Justice WILKINS concur in Justice RUSSON'S opinion.

## ADDENDUM

¶ 62 We feel it necessary to comment on the briefs in this case. Appellant's counsel has submitted briefs that are replete with pejorative remarks and epithets regarding opposing counsel, the trial court, Dr. Marble, and indirectly, this court. Statements such as Bear River's arguments are "supercilious," "absolutely foolish and asinine," and "ridiculous," that Bear River is "ignorant," that the trial court "ignored . . . every opinion ever written by this [c]ourt" and "fail[ed] to read and comprehend the actual language" of the applicable statute, that Dr. Marble is "notorious" and a "charlatan," and that Dr. Marble's opinion is "inarticulate" and an "absurd legal opinion" are wholly inappropriate in an appellate brief. Statements implying that small claims judges are not "real judge[s]" and that this court disregards the truth by prefacing an argument with "[o]n the outside chance the truth matters" are likewise inappropriate. Such remarks are merely argumentative and repugnant to fundamental and rudimentary notions of civility and decorum expected of attorneys, and as we have stated before, "[d]erogatory references to others . . . ha[ve] no place in an appellate brief and [are] of no assistance to this [c]ourt in attempting to resolve any legitimate issues presented on appeal." *State v. Cook,* 714 P.2d 296, 297 (Utah 1986) (per curiam).